Kenneth C. BORKEY, Sr., Ruth A. Borkey, his wife; and Kenneth C. Borkey, Jr., their son

v.

TOWNSHIP OF CENTRE; Centre Township Board of Supervisors, Ronald E. Knepp, individually and as Chairman of the Township Board of Supervisors; Larry C. Zimmerman; individually and in his official capacity as a Township Supervisor; and Clair Miller, individually and in his official capacity as a Township Supervisor, Appellants.

Commonwealth Court of Pennsylvania.

Argued March 29, 2004.
Decided April 27, 2004.

Joseph D. Shelby, Lancaster, for appellants.

Anthony M. Caputo, Harrisburg, for appellees.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEAVITT.

The Township of Centre, Centre Township Board of Supervisors and Supervisors Ronald E. Knepp, Larry C. Zimmerman and Clair Miller [1] (collectively Township), appeal from an order of the Court of Common Pleas of Berks County (trial court). The trial court granted the summary judgment motion of plaintiffs, Kenneth C. Borkey, Sr., retired Chief of Police for the Township, Ruth C. Borkey and Kenneth C. Borkey, Jr.[2] The judgment required the Township to reinstate the pension benefits of Kenneth C. Borkey, Sr. (Borkey), which had been reduced by the Township.

The facts are not in dispute. Borkey began employment with the Centre Township Police Department as a full-time police officer on January 1, 1974. In 1976, the Township established a municipal police pension fund for the benefit of retired police officers and their survivors, which was funded by contributions by individual police officers, the Township and the Commonwealth of Pennsylvania. In 1992, the Township amended its pension ordinance (1992 Pension Ordinance) to establish the calculation of pension benefits as follows:

*The monthly benefit shall be a sum equal to three quarters (3/4) of the highest twelve (12) months of earnings which* shall include regular pay, overtime, bonuses, holiday pay, equipment or clothing allowance, accrued vacation, and sick days up to a maximum of thirty (30) days. Any member shall accrue an additional benefit of Fifty and 00/100 Dollars ($50.00) per month for each additional year of service over Twenty (20) years with the maximum benefit for this service increment of up to Five Hundred and 00/100 Dollars ($500.00) per month.

Section 9 of the 1992 Ordinance, Stipulation of Fact No. 11 (Stipulation ___) (emphasis added).

In 1995, Borkey, then Chief of Police, expressed his intention to retire in the near future and requested the Township to amend the 1992 Pension Ordinance to include compensatory time to determine the "highest twelve (12) months of earnings." At the same time, a dispute arose between Borkey and the Township over the amount owed to Borkey for compensatory time. The parties entered into negotiations to resolve these matters, and on December 28, 1995, the Township and Borkey reached a settlement, which addressed three items in dispute: compensatory time, health care insurance and pension. Reproduced Record 225a (R.R. ___). Borkey agreed to release the Township from any further claim for compensatory time in consideration of $7,150.[3] The Township agreed to permit Borkey and his family to continue their participation in the Township's healthcare insurance program. The Township also agreed to amend the 1992 Pension Ordinance as necessary to give

1. These three individuals filed individually and in their official capacities as Chairman and Supervisors of the Township Board of Supervisors.

2. Plaintiffs Ruth A. Borkey and Kenneth C. Borkey, Jr. are contingent beneficiaries of Borkey's pension benefits.

3. Initially, Borkey asserted a right to a payment $8,091 for compensatory time that he believed should be included in his pension calculation. However, by the time the release was drafted, the claim for compensatory time was asserted to be $34,079.19. As noted by the Township, this means that the claim for compensatory time grew from 580 hours to 2,443 hours. Township Brief at 26, n. 6.

Borkey a monthly pension benefit of $3,409.25.

On December 28, 1995, at a special meeting of the Township Board of Supervisors (Board), the Board took action to implement the settlement. First, the Board passed a resolution to settle Borkey's compensatory time claim in the amount of $7,150. A second resolution permitted Borkey to enroll in the Township's healthcare insurance plan upon his retirement, provided he reimburse the Township for the premium and administrative charges. Finally, the Board enacted amendments to the 1992 Pension Ordinance. The amendments (1995 Pension Ordinance) added payments for compensatory time to the base used to calculate pensions. The 1995 Ordinance stated, in relevant part, as follows:

> The monthly benefits shall be a sum equal to three-quarters (3/4) of the highest twelve (12) consecutive months of earnings which shall include regular pay, overtime pay, *compensatory time pay*, longevity pay, holiday pay, equipment or clothing allowance, accrued vacation days up to a maximum of thirty-five (35) days and accrued sick days up to a maximum of thirty-five (35) days. Any member shall accrue an additional pension benefit of One Hundred and 00/100 Dollars ($100.00) per month for each additional year of service over Twenty (20) years with a maximum benefit for this service increment of up to Five Hundred and 00/100 Dollars ($500.00) per month.

Section 9 of the 1995 Pension Ordinance, Stipulation 21 (emphasis added). Section 19 of the 1995 Pension Ordinance provided that "the effective date of these improved benefits shall be January 1, 1995." Stipulation 19. However, Section 23 of the 1995 Pension Ordinance provided that the ordinance *"shall be effective on the earliest date allowed by law."* Stipulation 20 (emphasis added).

Borkey's retirement was accepted by the Township on December 30, 1995, effective December 31, 1995.[4] On January 3, 1996, the Township provided Borkey with a calculation of his monthly retirement benefits in the amount of $3,409.25. Thereupon, Borkey began to receive monthly benefits in that amount.

On June 12, 2000, the Township notified Borkey by letter that his annual pension and monthly pension payment were being adjusted immediately. The letter explained that under The Second Class Township Code,[5] the 1995 Pension Ordinance did not become effective until January 2, 1996, which was after the effective date of Borkey's retirement. Consequently, Borkey's pension benefit had to be calculated under the 1992 Pension Ordinance, and this reduced Borkey's monthly pension from $3,409.25 to $2,428.96. Finally, Borkey was directed to return $52,935 in "overpayments" to the Township.

Borkey did not appeal this decision; rather, with his wife and son, he initiated a civil action requesting the trial court to reinstate his pension benefits in accordance with the terms of the 1995 Pension Ordinance. The Borkeys' complaint contained three counts: "estoppel," "civil rights" and "mandamus." After discovery, the parties filed cross-motions for summary judgment.

The trial court granted the Borkeys' motion for summary judgment and denied

---

**4.** Borkey was to take a position specifically created for him as Police Administrator on January 1, 1996.

**5.** The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

the Township's motion. The trial court agreed with the Township that the effective date of the 1995 Pension Ordinance was, as a matter of law, January 2, 1996, as provided in the Second Class Township Code.[6] However, the trial court held that under the doctrine of equitable estoppel, the Township was barred from changing Borkey's pension benefits because he had justifiably relied upon the belief that the 1995 Pension Ordinance would be used to calculate his pension when he decided to retire. Further, the trial court distinguished this case from the precedent holding that the doctrine of equitable estoppel cannot be used to require a government agency to violate statutory law.[7] Because the trial court based its decision on estoppel, it did not address the other counts in the complaint. The Township then appealed to this Court.

■ On appeal,[8] the Township raises three issues. First, it contends that equitable estoppel cannot be invoked to prevent enforcement of a statute. Indeed, the Township was required to correct the error in Borkey's pension. Second, the Township contends the trial court erred because the current Board cannot be bound by the *ultra vires* acts of a previous Board. Third, it argues that the retroactive application of the 1995 Ordinance violates Article III, Section 26 of the Pennsylvania Constitution.

■ The doctrine of estoppel is an equitable remedy that may be asserted against the Commonwealth or one of its political subdivisions. *Chester Extended Care Center v. Com., Department of Public Welfare*, 526 Pa. 350, 355, 586 A.2d 379, 382 (1991). In order to apply the doctrine of equitable estoppel against the Commonwealth, it must be shown that the Commonwealth (1) intentionally or negligently misrepresented some material facts, (2) knowing or having reason to know that the other party would rely on that misrepresentation, and (3) thereby induced the party to act to his or her detriment. *Sklar v. Department of Health*, 798 A.2d 268 (Pa. Cmwlth.2002). In addition, one who asserts estoppel must establish the essential elements by clear, precise, and unequivocal evidence. *Foster v. Westmoreland Casualty Company*, 145 Pa.Cmwlth. 638, 604 A.2d 1131 (1992).

■ Here, the factual requisites of equitable estoppel have been met. As found by the trial court, Borkey's retirement was governed by the 1992 Pension Ordinance, not the 1995 Pension Ordinance as he had been informed by the Township. Further, the Township knew that Borkey relied upon the representations made by the Township and its solicitor, and Borkey's reliance thereon was reasonable. Finally, had Borkey known he had to remain in active service until January 2, 1996, it would have been a simple matter for Borkey to postpone his resignation. Borkey's actions were, thus, materially affected by the representations made by the Town-

---

**6.** Section 1601(a) of the Code states in relevant part, "Ordinances shall be recorded in the ordinance book of the township and are effective five days after adoption unless a date later than five days after adoption is stated in the ordinance." 53 P.S. § 66601(a).

**7.** *See, e.g., Finnegan v. Public School Employees Retirement Board,* 126 Pa.Cmwlth. 584, 560 A.2d 848 (1989).

**8.** Our scope of review of an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Fleetwood Area School District v. Berks County Board of Assessment Appeals,* 821 A.2d 1268 (Pa.Cmwlth.2003).

ship.[9]

■■■ However, the inquiry does not end here. Even where the factual requisites are met, the doctrine of equitable estoppel cannot be invoked against the Commonwealth where to do so would violate positive law. As our Supreme Court explained:

> [T]he Commonwealth or its subdivisions and municipalities cannot be estopped by the acts of its agents and employees if those acts are outside the agents powers, in violation of positive law, or acts which require legislative or executive action.

*Central Storage Transfer Co. v. Kaplan*, 487 Pa. 485, 489, 410 A.2d 292, 294 (1979) (quoting *Kellams v. Public School Employees Retirement Board*, 486 Pa. 95, 100, 403 A.2d 1315, 1318 (1979)).[10]

Our Court has analyzed the positive law exception to equitable estoppel in the specific context of a retirees pension benefits. In *Finnegan v. Public School Employe's Retirement Board*, 126 Pa.Cmwlth. 584, 560 A.2d 848 (1989), a teacher sought to purchase 15 years of service in order to qualify for an early retirement being offered to employees with 30 or more years of service. The statute only authorized the purchase of a maximum of 12 years of service; however, representatives of the Public School Employee Retirement System erroneously advised Finnegan that she could purchase 15 years of service. Relying on these representations, Finnegan submitted an application to purchase

15 years of service and retired. Thereafter, she was informed that her purchase was limited to 12 years of service, which reduced her monthly benefits. Despite the fact that Finnegan established every element of equitable estoppel, this Court held that the Public School Employees Retirement System could not be estopped from enforcing the statutory provision that limited a purchase of credited time to a maximum of 12 years of service. We reasoned that to allow an error of a government employee to override the enforcement of a statute would be tantamount to amending the statute. *Finnegan*, 560 A.2d at 851.

■■■ In the instant case, the trial court tried to distinguish *Finnegan*. It reasoned that the Borkeys would not be obtaining a monetary benefit prohibited by statute. Rather, they were obtaining a benefit negotiated by the parties and expressed in the 1995 Pension Ordinance. Opinion at 10–11. As an alternative to the trial courts analysis, the Borkeys argue that they are invoking an equitable estoppel in order to *enforce* a statute, *i.e.*, the 1995 Pension Ordinance. Appellees Brief at 18.

These arguments miss the mark. Both the 1992 Pension Ordinance and the 1995 Pension Ordinance provide in relevant part that

> [a]ny police officer who is no longer working for the Township and is eligible for a pension in the future shall have

---

**9.** Borkey was not under a duty to inquire into the validity of the Township's actions. *Chester Extended Care Center*, 526 Pa. at 355, 586 A.2d at 382 (wherein the Supreme Court held that in order for estoppel to apply, the party asserting the estoppel must be free of a duty to inquire)

**10.** Equitable estoppel has been applied to prevent the Department of Public Welfare from

seeking returns of funds paid for services rendered to indigent persons in nursing homes in order to avoid a fundamental injustice. *Chester Extended Care Center; Cameron Manor, Inc. v. Department of Public Welfare*, 681 A.2d 836 (Pa.Cmwlth.1996). To the extent these cases have precedent here, they would prevent the Townships effort to recover overpayments made to Borkey.

his/her benefits determined *by the provisions of the ordinance in effect at the time the officer ceased working for the Township.*

Section 2 of the 1992 and 1995 Pension Ordinance (emphasis added). Section 6 sets forth the Age and Service Requirements as follows:

Each participant who has been in the employ of the Township as a full time [employee/police officer] as above set forth for twenty (20) years in the aggregate or has attained the age of fifty-five (55) years and is vested may retire and shall, upon his actual retirement from employment with the Township, be entitled to receive pension or retirement benefits as are hereinafter provided.

Section 7 of the 1992 and 1995 Pension Ordinance. The 1992 and 1995 Pension Ordinances each require that benefits be calculated in accordance with the ordinance in effect at the time of retirement. Further, the 1995 Pension Ordinance itself stated its effective date was the earliest allowed by law, *i.e.,* January 2, 1996. There is no way around the conclusion that the 1992 Pension Ordinance was in effect at the time of Borkeys retirement, and its language governs the calculation of his pension.

What the Borkeys really seek is to modify Section 1601 of The Second Class Township Code, which provides:

Ordinances shall be recorded in the ordinance book of the township and are effective five days after adoption unless a date later than five days after adoption is stated in the ordinance.

53 P.S. § 66601(a). The Board had no power to alter or modify the effective date of the 1995 Pension Ordinance to a date earlier than five days after adoption. To allow the Board to establish a January 1, 1995 effective date for an ordinance enacted on December 28, 1995, is simply contrary to positive law. It would be tantamount to allowing the Board to amend The Second Class Township Code. *Finnegan,* 560 A.2d at 851.

We hold, therefore, that the trial court erred in its application of equitable estoppel to this case. To hold otherwise, would allow local officials to set aside the mandate of a statute governing their actions.[11] This cannot be allowed to stand.

■ Because we find that equitable estoppel cannot perpetuate an action that violates positive law, the next question is one of remedy. This question of how to correct unlawful pension benefits has been specifically considered by this Court in *Kellams v. Public School Retirement Board,* 38 Pa.Cmwlth. 101, 391 A.2d 1139 (1978), *aff'd per curiam,* 486 Pa. 95, 403 A.2d 1315 (1979).

In *Kellams,* a class of annuitants collecting pensions from the Public School Employes' Retirement System of Pennsylvania (annuitants) and the Public School Employes' Retirement Board (Retirement Board) filed a joint petition for declaratory judgment. The annuitants were former public school employees who retired between the years 1968 through 1973 and had purchased credit for prior out-of-state employment before retiring. After having received retirement benefits based, *inter alia,* on out-of—state employment, the Retirement Board then notified the annuitants that this inclusion was error. As a result, the annuitants had received a higher monthly retirement allowance than that

---

11. Indeed, there would be a temptation by local officials to collude with private parties to avoid inconvenient statutes. We do not suggest that collusion is present here; we address the public policy considerations that limit the application of equitable estoppel to governmental bodies.

to which they were legally entitled. As in this case, the annuitants were told that their future allowances would be based on a proper computation of benefits and, further, the annuitants were asked to repay the funds which they had received mistakenly.

This Court held that the Retirement Board could recompute the annuitants' future benefits in accordance with the applicable statute, noting that the annuitants' claim that "the Commonwealth is estopped from correcting its mistake is simply not the law in Pennsylvania." *Kellams*, 391 A.2d at 1141. However, we did not allow the Retirement Board to recover the excessive payments that it had made to the annuitants. On appeal, our Supreme Court unanimously affirmed our holding that the Retirement Board could not be equitably estopped from correcting pension mistakes. However, the Supreme Court was equally divided on the issue of recoupment; the effect of this split was to affirm this Courts decision that overpayments of pension benefits may not be recouped. *Kellams*, 486 Pa. at 102, 403 A.2d at 1319.

Under *Kellams*, it is clear that the Township can, and must, correct its error. The correction, however, must be limited to a future effect. The Township may not demand the repayment of the money it incorrectly paid to Borkey.[12]

Accordingly, the order of the trial court is reversed.[13]

### ORDER

AND NOW, this 27th day of April, 2004, the order of the Court of Common Pleas of Berks County dated August 26, 2003, in the above-captioned matter is hereby reversed and remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

12. Because of our disposition on this issue we need not address the Townships remaining issues.

13. The trial court disposed of Borkey's complaint on the sole issue of estoppel without addressing the remaining counts of mandamus or civil rights violations. Because of our disposition of the issue of estoppel, we direct the trial court to address the remaining counts of Borkey's complaint.