Lower Bucks County Joint       :
Municipal Authority           :
                           :
        v.               :
                           :
Patricia Koszarek,         :    No. 686 C.D. 2020
           Appellant     :    Argued:  November 9, 2020

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge (P.)
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                           FILED:  December 11, 2020

Patricia Koszarek (Koszarek) appeals from the Bucks County Common Pleas Court's (trial court) April 6, 2020 decision (April 6, 2020 Decision) finding for the Lower Bucks County Joint Municipal Authority (Authority) and against Koszarek in the amount of $26,399.77, in an action seeking to recover employer overpayments the Authority made to Koszarek.[1]  Koszarek presents five issues for this Court's review: (1) whether the trial court erred by concluding that the Authority may recover alleged overpayments; (2) whether the trial court erred or abused its discretion by failing to conclude that the Authority was estopped from seeking repayment of wages and benefits it previously approved; (3) whether the trial court abused its discretion by finding that wage and benefit overpayments were made; (4) whether the trial court erred or abused its discretion by rejecting Koszarek's counterclaim based on a settlement agreement and release (Settlement Agreement) between Koszarek and the Authority; and (5) whether the trial court erred or abused its discretion by concluding

---

[1] The April 6, 2020 Decision was docketed and mailed on April 9, 2020.

that the Authority recouped overpayments from other employees. After review, this Court affirms.

The Authority initially employed Koszarek as its Finance Director[2] on a temporary basis effective December 3, 2007. On May 21, 2008, the Authority promoted Koszarek to Financial Assistant to the Managing Director, paying her $72,189.00 annually, plus benefits.[3] Koszarek was not an officer of the Authority, and had no power to make policy. Koszarek's duties included completing and signing any and all payroll forms and regular pay submissions, as well as tracking employees' vacation and/or sick time and usage.

The Authority's Managing Director Vijay Rajput, Ph.D. (Rajput) was Koszarek's supervisor. Rajput testified that his expertise was in agriculture and civil engineering, not finance. Rajput explained that he deferred to Koszarek's expertise and trusted that the information she presented to him was accurate. He further noted that his reliance on Koszarek was normal, as he also supervised other departments and relied on the department managers and superintendents to perform their jobs and to present him with honest information.

On April 25, 2013, Koszarek submitted a resignation letter to the Authority (2013 Resignation letter), therein claiming to the Authority's Board of Directors (Board) that Rajput discriminated against and belittled her. *See* Reproduced Record (R.R.) 510a-512a. She also raised concerns regarding potential violations of the Family and Medical Leave Act,[4] Consolidated Omnibus Budget Reconciliation Act

---

[2] The Finance Director for the Authority is essentially the equivalent of a Controller for a large corporation.

[3] Koszarek's compensation was governed by the Collective Bargaining Agreement for supervisory employees in place at the time and amended from time to time thereafter.

[4] 29 U.S.C. §§ 2601-2654.

2

of 1985,[5] and the Fair Labor Standards Act of 1938.[6]  However, because the Board refused to accept her resignation, Koszarek continued in her position.

On September 25, 2013, Koszarek filed a discrimination charge against the Authority with the United States Equal Employment Opportunity Commission (EEOC), and subsequently filed a "whistleblower" claim with the EEOC.  On March 13, 2014, Koszarek submitted a retirement letter to the Authority in which she stated that her last day in the office would be March 27, 2014.  She requested a payout in her last paycheck for her remaining vacation time and further requested to use "personal, family illness and compensation time beginning March 28, 2014, as is consistent with Authority practice."  R.R. at 475a.  The Board approved her request in executive session without the need for an audit, because the Board trusted the accuracy of Koszarek's representations.

At the next public meeting, the Board publicly expressed its appreciation for Koszarek's service.  After Koszarek retired in 2014 from the Authority's employment, Susan Wallover (Wallover) was assigned to assist with payroll.  Upon discovering an employee payroll discrepancy resulting in the employee's overpayment, Wallover researched the payroll records for other employees and prepared a written report for Rajput listing the employee names and discrepancies she discovered in their pay.  *See* R.R. at 669a-671a.

After reviewing Wallover's report, the Authority retained Certified Public Accountant (CPA) Louis Polaneczky (Polaneczky) to review Wallover's report. Polaneczky was familiar with the Authority's finances because he had previously been consulted in the Authority's financial statement preparation.  Polaneczky reviewed the Wallover report and verified the information contained therein.  On November 17,

---

[5] 29 U.S.C. §§ 1161-1169.
[6] 29 U.S.C. §§ 201-219.

2014, Polaneczky prepared and presented his own written report to the Authority's Board, in which he recommended that further research was required and a forensic accounting should be completed. Polaneczky also opined in his report that the number and extent of the payroll discrepancies suggested either gross incompetence or possible fraud.

The Authority retained Forensic Accountant Joseph Barbagallo, CPA (Barbagallo) who was given complete access to the Authority's financial records, reports, policies, procedures, contacts, and anything else he believed necessary for his investigation. Barbagallo's forensic analysis revealed that Koszarek had overpaid herself $26,399.77 from December 3, 2007 to April 27, 2014, as follows: (1) $4,646.13 regular pay; (2) $5,420.76 vacation pay; (3) $10,841.52 sick pay; (4) $3,500.91 compensatory time; and (5) $1,990.45 in other payments. Barbagallo also determined that Koszarek had failed to properly withhold more than $2,600.00 in total federal, state and local income taxes for the pay period ending March 30, 2014.

By April 30, 2015 letter, the Authority's Solicitor notified the Bucks County District Attorney's Office (District Attorney's Office) of the irregularities. *See* R.R. at 496a-497a. Also in April 2015, the State Ethics Commission's (Ethics Commission) Investigative Division (Investigative Division) received information pertaining to alleged overpayments to Koszarek. After an investigation, the Ethics Commission elected not to pursue the matter further because of "a good faith and legitimate concern as to the authenticity, completeness, accuracy, and/or sufficiency of those records maintained by the [Authority]."[7] R.R. at 506a. On June 10, 2015,

---

[7] The Ethics Commission explained in its May 16, 2016 Praecipe to Withdraw Investigative Complaint/Findings Report and Discontinue Matter With Prejudice, in pertinent part:

> 14. Following the issuance of the Investigative Complaint/Findings Report on April 11, 2016, [the Ethics Commission's special investigator] received additional information from representatives of the [Authority], who provided what appeared to be additional

Koszarek executed the Settlement Agreement, settling her discrimination and whistleblower claims against the Authority in exchange for $70,000.00. By March 28, 2016 letter, Bucks County District Attorney David Heckler (D.A. Heckler) responded that, after conducting an investigation, the District Attorney's Office did not have sufficient evidence to charge Koszarek for criminal conduct.[8] *See* R.R. at 498a-500a.

On April 1, 2016, the Authority commenced the instant action by writ of summons in the trial court. On February 17, 2017, the Authority filed its Complaint against Koszarek seeking repayment of the alleged overpayments totaling $28,999.77.[9] Therein, the Authority averred that Koszarek had intentionally overpaid herself and failed to withhold necessary taxes. Koszarek filed an answer thereto and, subsequently, on July 26, 2018, filed an Amended Answer, New Matter, Affirmative Defenses, and Counterclaim. In her counterclaim, Koszarek alleged retaliation and abuse of process.

> documentation and/or verification concerning the sick leave overpayment as alleged against Koszarek.
>
> 15. Upon review of those records, *it is the opinion of counsel for the Investigative Division that a serious question has arisen as to whether or not an overpayment was actually received by Koszarek.*
>
> 16. The receipt of this information was received after the issuance of the Investigative Complaint/Findings Report, and was not previously provided to the Investigative Division, despite multiple requests for any and all documentation regarding leave, sick leave, leave payouts, and any other financial records which would be responsive to the allegations levied against [Koszarek].
>
> 17. *Upon review of the forensic audit that was initially provided to the Investigative Division, several of those findings were dispelled through the efforts of the Investigative Division, and at the very least, the records of the [Authority] are incomplete, inaccurate and give questions as to creditability and/or potential authenticity.*

R.R. at 504a-05a (italic and underline emphasis added).

[8] In his letter, D.A. Heckler criticized the Authority, admonishing its counsel: "I am sure that you recognize that this loss of taxpayer[s'] money is a product of wholly inadequate fiscal procedures at the [A]uthority. I trust that your clients [sic] will follow the recommendations of the Barbagallo audit." R.R. at 500a.

[9] This amount included the $2,600.00 in taxes that Koszarek allegedly failed to withhold.

At trial, on January 28 and 29, 2020, the Authority presented witnesses including Rajput, Wallover, Polaneczky and Barbagallo, and documentary evidence that Rajput paid the Authority for an overpayment it made to him. The Authority indicated it was continuing its efforts to collect other overpayments. Koszarek disputed the Authority's evidence, maintaining that all payments to the listed Authority employees were appropriate. However, Koszarek did admit that she had overpaid herself $906.30, allegedly due to a coding error. *See* R.R. at 860a. Koszarek did not present any independent testimony from an accountant or other Authority employee in support of her assertions.

In the April 6, 2020 Decision, the trial court ruled:

Based upon the facts presented at trial, [the Authority] has proven by clear and substantial evidence overpayments to [Koszarek] from December 3, 2007 to April 27, 2014 totaling $26,399.77. These overpayments were in the following categories: (1) overpayment of regular pay, $4,646.13; (2) overpayment of vacation pay, $5,420.76; (3) overpayment of sick pay, $10,841.52; (4) overpayment of compensatory time pay, $3,500.91; and ([5]) other payments determined to be paid back to the Authority of $1,990.45. This amount totals $26,399.77. This Court concludes the evidence proves damages as owed to [the Authority] from [Koszarek] in the total amount of $26,399.77 representing total employer overpayments to her to which she was not entitled. [Koszarek's] overpayment is by far the highest amount due of the overpayments to employees.

April 6, 2020 Dec. at 4.  On April 20, 2020, Koszarek filed a notice of appeal.[10,11,12]

---

[10] On April 13, 2020, Koszarek filed a post-trial motion (Post-Trial Motion) seeking reconsideration.  Before the trial court took any action on the Post-Trial Motion, on April 17, 2020, Koszarek filed a concise statement of errors complained of on appeal and then, on April 20, 2020, filed a notice of appeal to the Pennsylvania Superior Court.  On May 18, 2020, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a).  On May 26, 2020, the Pennsylvania Superior Court transferred the matter to this Court.

Importantly, "[o]nce a post-trial motion is timely filed, judgment cannot be entered until the trial court enters an order disposing of the motion or the motion is denied by operation of law one hundred and twenty days after the filing of the motion.  Pa.R.C.P. No. 227.4." *Melani v. Nw. Eng'g, Inc.*, 909 A.2d 404, 405 (Pa. Super. 2006).  Entry of judgment is a prerequisite to an appealable order.  *See id.*  Notwithstanding, the trial court never ruled on the Post-Trial Motion.  On August 6, 2020, this Court issued an order directing the parties to address the appealability of the April 6, 2020 Decision, given that the trial court had not yet entered judgment.

On August 7, 2020, Koszarek filed an amended brief and explained therein:

> The Court should understand that[,] on March 21, 2020, the [trial court] issued Emergency Order 2020-6 in response to the COVID-19 crisis, in which it directed that 'the Office of the Prothonotary shall not enter judgment in any matter.'  This order having expired, judgment was entered on the non-jury verdict on August 7, 2020.  This has now rendered the underlying order an appealable matter and not interlocutory.  *Sovereign Bank v.* [*Valentino*], . . . 914 A.2d 415, 419 [n.6] (Pa. Super. 2006) ('A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction.'). . . .

Koszarek Amended Br. at 2 n.1.

Further complicating matters, due to the COVID-19 pandemic, the trial court issued numerous blanket orders suspending all time calculations, ultimately until May 8, 2020.  Therefore, as of August 7, 2020, given the trial court's orders, 120 days had not passed since the filing of the Post-Trial Motion, and *absent a ruling on the Post-Trial Motion, the trial court did not have authority to enter the August 7, 2020 entry of judgment*.  Notwithstanding, it appears that, as of the date of the issuance of this opinion, despite the time calculation suspension, 120 days have now expired since Koszarek filed the Post-Trial Motion.  Therefore, the Post-Trial Motion has been denied as a matter of law, and the trial court no longer has jurisdiction to rule thereon.  Accordingly, as of this date, this Court could only remand for the trial court to properly enter judgment.

Rule 105(a) provides:

> These rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every matter to which they are applicable.  In the interest of expediting [a] decision, or for other good cause shown, an appellate court may . . . disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its

7

Koszarek first contends that the trial court erred by concluding that the Authority may recover alleged overpayments. This Court disagrees.

Here, the trial court noted that Section 5607(b)(2) of the Municipality Authorities Act (Act)[13] specifies that the purpose of each authority is to "benefit the people of the Commonwealth [of Pennsylvania (Commonwealth)] by, among other things, increasing their commerce, health, safety and prosperity . . . ." 53 Pa.C.S. § 5607(b)(2). In furtherance of that purpose, the trial court concluded that the Authority

own motion and may order proceedings in accordance with its direction.

Pa.R.A.P. 105(a). Accordingly, for the purposes of judicial economy, this Court regards the August 7, 2020 entry of judgment valid upon the expiration of the 120 days.

> [11] The decision to grant a new trial based on a challenge to the weight of the evidence is within the sound discretion of the trial court. Absent an abuse of discretion, we will not reverse the trial court's ruling. It is well established that the trial court should award a new trial on the basis requested by appellant only where a verdict is so contrary to the evidence so as to shock one's sense of justice and make the award of a new trial imperative. An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court.

*Commonwealth v. Lilliock*, 740 A.2d 237, 241 (Pa. Super. 1999) (citations omitted).

> An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. 'Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.' [*Morrison v. Dep't of Pub. Welfare*, 646 A.2d 565, 570-71 (Pa. 1994)] (quoting *Coker* [*v. S.M. Flickeringer Co., Inc.*], 625 A.2d [1181,] 1187 [(Pa. 1993)]).

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000) (citations omitted).

[12] On November 12, 2020, following oral argument, Koszarek applied for permission to submit a post-argument statement for the panel's consideration (Post-Argument Application) pursuant to Rule 2501, Pa. R.A.P. 2501. The Authority did not file a response. Upon consideration, this Court grants the Post-Argument Application.

[13] 53 Pa.C.S. §§ 5601-5623.

8

must spend its funds responsibly, and that when those funds are improperly used, the Authority must correct its error.[14] The trial court explained that it "did not enter verdict on any theory of conversion, mistake, embezzlement, breach of fiduciary duty or fraud." May 18, 2020 Trial Ct. Op. issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (Rule 1925(a) Opinion) at 6, R.R. at 911a. Rather, the trial court's opinion is founded in the principle of restitution.

Long ago, the Pennsylvania Supreme Court declared "that money paid under a mistake of fact may be recovered back is authoritatively settled." *Donner v. Sackett*, 97 A. 89, 91 (Pa. 1916). Similarly, in *Greenwich Bank v. Commercial Banking Corp.*, 85 Pa. Super. 159 (1925), the Pennsylvania Superior Court explained:

> The defendant is in possession of money of the plaintiff which in good conscience it is not entitled to keep and the law requires its return.
>
> It is of no moment that no privity of contract existed between the plaintiff and defendant. 'Where one has in his hands money which in equity and good conscience belongs and ought to be paid to another, an action for money had and received will lie for the recovery thereof. No privity of contract is necessary to sustain this action, for the law, under these circumstances, implies a promise to pay'[.] *McAvoy & McMichael v.* [*Commonwealth*] *Title Ins. & Tr*[.] *Co.*, 27 Pa. Super. 271[, 276-77 (1905)][.]

*Greenwich Bank*, 85 Pa. Super. at 163; *see also Smith v. Capital Bank & Trust Co.*, 191 A. 124 (Pa. 1937); *McKibben v. Doyle*, 34 A. 455 (Pa. 1896); *Glen Alden Corp. v. Tomchick*, 130 A.2d 719, 720 (Pa. Super. 1957) ("[I]t is clear that the defendant obtained money from the plaintiff to which she was not entitled, and under the theory of unjust enrichment, the plaintiff is entitled to restitution of the sum improperly paid.").

---

[14] This Court notes that Section 5612 of the Act, 53 Pa.C.S. § 5612, imposes comprehensive duties, specific prohibitions and reporting requirements upon an Authority with respect to the management of its finances.

More recently, the Pennsylvania Supreme Court

looked to the Restatement [(First)] of Restitution [Am. Law. Inst. (1937) (Restatement)] as a source of authority in determining whether the retention of a particular benefit would be unjust. Section [20] of the Restatement provides as follows:

> § 20 MISTAKE AS TO EXTENT OF DUTY OR AMOUNT PAID IN DISCHARGE THEREOF:
>
> A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess.

*Lucey v. Workmen's Comp. Appeal Bd. (Vy-Cal Plastics PMA Grp.)*, 732 A.2d 1201, 1204 (Pa. 1999) (citations omitted).

> [In order] to recover . . . , two elements of the remedy of restitution must be found to exist: (1) a requisite mistake, and (2) consequent unjust enrichment. It is well-settled that equitable relief will generally not issue to correct a mistake of law but may issue to rectify a mistake of fact which has been defined by our Supreme Court as 'any mistake except a mistake of law.' *Betta v. Smith*, . . . 81 A.2d 538, 539 ([Pa.] 1951) . . . .

*Dep't of Gen. Servs. v. Collingdale Millwork Co.*, 454 A.2d 1176, 1179 (Pa. Cmwlth. 1983) (footnote omitted).

Here, in support of its analysis, the trial court cited *Lucey* and this Court's decision in *Mino v. Workers' Compensation Appeal Board (Crime Prevention Ass'n)*, 990 A.2d 832 (Pa. Cmwlth. 2010), wherein this Court rejected a claimant's assertion that his employer should not be entitled to an offset based on the theory of unjust enrichment. The *Mino* Court concluded: "[The insurer's] payment of workers'

10

compensation benefits to [the c]laimant . . . was based on [the insurer's] mistaken belief as to the discharge of its duties . . . and [the c]laimant was unjustly enriched by [the insurer's] mistake." *Id*. at 842.

Koszarek attempts to distinguish *Mino*, claiming that "the decision was based entirely on the statutory scheme of workers' compensation and decisions interpreting this scheme, a set of rules and regulations not relevant to the case at bar." Koszarek Amended Br. at 47. Koszarek misreads *Mino*. Although *Mino* involved workers' compensation law, nothing in the opinion limits the Court's analysis thereto. Based on the principle of restitution, this Court concluded that claimant was unjustly enriched by the insurer's mistake, and accordingly, the insurer was entitled to an offset.

Koszarek further asserts that "as a matter of law, where there is an express, written agreement, the theory of unjust enrichment does **not** apply." Koszarek Amended Br. at 39. In support, Koszarek references *Lackner v. Glosser*, 892 A.2d 21 (Pa. Super. 2006). Therein, a company's suspended vice president sought, *inter alia*, restitution pertaining to the value of patents the United States Patent and Trademark Office issued for devices, some of which the vice president had designed. The vice president assigned the patents to the corporation. "All of the assignments explicitly provided that the patents were assigned 'in consideration of One Dollar ($1.00) and other good and valuable consideration paid to [the vice president] by [the] assignee, receipt whereof [the assignor] hereby acknowledge[s].'" *Lackner*, 892 A.2d at 25 (quoting the record).

In rejecting the restitution claim, the Pennsylvania Superior Court explained:

> [T]he record contains fully-executed written agreements wherein [the vice president] assigned the patents 'in consideration of One Dollar ($1.00) and other good and valuable consideration' acknowledged as received by [the vice president]. As previously noted, [the vice president]

11

testified that he freely assigned the patents without coercion. [The vice president's] unjust enrichment action cannot proceed in the face of fully-executed, express contracts.

*Lackner*, 892 A.2d at 34 (record citations omitted).

Unlike in *Lackner*, the restitution sought in the instant case is for monies paid in error. The existence of Koszarek's employment contract does not preclude restitution for payments intended to be made in accordance with that agreement, but made in error and in excess of those required under the agreement. Therefore, *Lackner* is distinguishable. Accordingly, for the aforementioned reasons, the trial court did not err by concluding that the Authority proved that Koszarek had been overpaid, and that the Authority could recover the overpayments under the principle of restitution.

Koszarek next argues that the trial court erred or abused its discretion by failing to conclude that the Authority was estopped from seeking repayment of wages and benefits it previously approved. Koszarek specifically contends that the Authority should be estopped from recovering the alleged overpayments "because her salary payments and benefits were ***approved*** by both of her supervisors at the time, and because her post-retirement benefits were also implicitly approved by the Board [] in executive session without objection." Koszarek Amended Br. at 49. She further asserts that

> [i]n making the decision to retire, [Koszarek] reasonably relied upon the Authority's approval of her wages and future benefits payment package, which served as an inducement to retire at that time. The Authority should therefore have been estopped from changing its mind and demanding repayment of funds which it previously approved.

Koszarek Amended Br. at 50.

In support of her argument that the Authority is estopped from seeking repayment, Koszarek cites *Kellams v. Public School Employes' Retirement Board*, 403 A.2d 1315 (Pa. 1979), wherein an equally divided Pennsylvania Supreme Court

12

considered whether the Commonwealth was entitled to restitution, where, over a period of several years, as a result of its own error, it paid public school employees more retirement benefits than the applicable law allowed. In an Opinion in Support of Affirmance,[15] Justice Roberts stated: "Not a particle of evidence suggests the retirees improperly induced the overpayments. Indeed, the overpayments were made solely because the Commonwealth mistakenly interpreted the [law]. And nothing would suggest the retirees sought to perpetuate the Commonwealth's error." *Kellams*, 403 A.2d at 1316 (Roberts, J., Op. in Support of Affirmance). Justice Roberts further noted:

> The Commonwealth Court . . . fully explained:
>
> > [H]ere the issue is not the correctness of the Commonwealth claim, it is whether it would be unconscionable to permit the Commonwealth to demand restitution in this unusual situation. Perhaps the things that make the plaintiffs' position so unique are that all the facts were well known to everyone, as far as the record shows the original incorrect ruling was made unilaterally by the Commonwealth after a request and full disclosure by the plaintiffs, and the Commonwealth persisted in its error over a number of years while the plaintiffs used the funds presumably for the purposes for which retirement payments are intended, i.e., to pay for living expenses after the income from gainful employment has ended.[]
>
> [*Kellams v. Pub. Sch. Emps.' Retirement Bd.*,] . . . 391 A.2d 1139, 1141 ([Pa. Cmwlth.] 1978).
>
> The Commonwealth Court recognized that the manifest hardship repayment would impose must be avoided. On this record, devoid of any indication that the retirees were in any

---

[15] An opinion of affirmance by an equally divided court has no precedential value. *See Commonwealth v. Covil*, 378 A.2d 841 (Pa. 1977).

way responsible for the Commonwealth's error in making overpayments, the Commonwealth Court's order refusing to direct repayment is eminently proper.

*Kellams*, 403 A.2d at 1316 (Roberts, J., Op. in Support of Affirmance).

*Kellams* is distinguishable. Here, unlike in *Kellams*, the Authority did not wait years but, rather, discovered the alleged overpayments shortly after Koszarek's retirement. The Authority promptly commissioned a forensic accounting review, approached both the District Attorney's Office and the Ethics Commission, and thereafter initiated the instant action. Further, unlike in *Kellams*, there is at least "a particle of evidence [that] suggests [Koszarek] improperly induced the [alleged] overpayments." *Kellams*, 403 A.2d at 1316. Thus, the facts in the instant matter are far different from those in *Kellams*.

Moreover, in *Greenwich Bank*, the Superior Court declared:

> [I]t [does not] matter that the negligence of the plaintiff contributed to the double payment. 'Negligence in making a mistake does not deprive a party of his remedy on account thereof; it is the fact that one by mistake unintentionally pays money to another to which the latter is not entitled from the former, that gives the right of action[.'] *Kunkel v. Kunkel*, 110 A. 73 [(Pa. 1920).]

*Greenwich Bank*, 85 Pa. Super. at 163. Notwithstanding, the *Kunkel* Court specifically distinguished negligent overpayments from those overpayments "paid . . . intentionally, [with the payor] not choosing to investigate the facts." *Kunkel*, 110 A. at 75 (quoting *Girard Tr. Co. v. Harrington*, 23 Pa. Super. 615, 621 (1903)); *see also McKibben*. The *Kunkel* Court emphasized, however, "[t]he mere omission to take advantage of means of knowledge within the reach of the party paying [money under mistake of fact] does not prevent a recovery." *Kunkel*, 110 A. at 75 (quoting *McKibben*, 34 A. at 455). Here, there is no evidence that the Authority knew the payments it was approving exceeded the amounts to which Koszarek was entitled. Rather, the record evidence reflects that

14

the Authority unknowingly approved the alleged overpayments under what were, at worst, negligent circumstances.

Further, the record evidence does not support Koszarek's assertion that "[i]n making the decision to retire, [she] reasonably relied upon the Authority's **approval** of her wages and future benefits payment package[.]" Koszarek Amended Br. at 50 (emphasis added). In her March 13, 2014 resignation letter, Koszarek described her reasons for retiring as her concerns regarding the Authority's alleged possible "illegal and unethical actions" and the Authority's failure to "take seriously [her] complaints, to investigate them . . . and address them[.]" R.R. at 475a. Therein, she requested "a payout in [her] last pay [for her] current vacation and sick time held on the Authority's books and to use [her] personal, family illness and compensation time beginning March 28, 2014[,] as is consistent with current Authority practices." *Id.* Notably, the Board approved her retirement *in response to* the March 13, 2014 resignation letter. Thus, Koszarek's decision to retire could not have been based on the Authority's subsequent "approval of her wages and future benefits payment package[.]"[16] Koszarek Amended Br. at 50. Accordingly, the trial court did not err or abuse its discretion when it held that, regardless of the Board's approval of the alleged

---

[16] Koszarek also cites *Borkey v. Township of Centre*, 847 A.2d 807 (Pa. Cmwlth. 2004), for the proposition, "[t]he doctrine of equitable estoppel is an equitable remedy that may be asserted against the Commonwealth or one of its political subdivisions." *Id.* at 811. This Court does not hold otherwise. Notably, the *Borkey* Court explained:

> In order to apply the doctrine of equitable estoppel against the Commonwealth, it must be shown that the Commonwealth (1) intentionally or negligently misrepresented some material facts, (2) knowing or having reason to know that the other party would rely on that misrepresentation, and (3) **thereby induced the party to act to his or her detriment**.

*Id.* at 811 (emphasis added). Koszarek's March 13, 2014 resignation letter, wherein she described her reasons for retirement, undermine Koszarek's assertion that the Authority's perceived acquiescence in the alleged overpayments induced her to retire.

overpayments, the Authority was entitled to recover any proven overpayments from Koszarek.

Koszarek next argues that the trial court abused its discretion by finding that wage and benefit overpayments were made. According to Koszarek, "***without making any credibility determinations***, the [trial c]ourt discussed the Authority's expert witnesses and ignored [] Koszarek's own testimony, concluding only that she 'did not present any independent testimony from an accountant or other [Authority] employee supporting her assertions.'" Koszarek Amended Br. at 53 (quoting Rule 1925(a) Op. at 4).

Contrary to Koszarek's contention, the trial court did not ignore Koszarek's testimony. Rather, it specifically noted that "Koszarek disputed the findings of [the Authority's] witnesses, including its outside accountant and forensic account[ant] and maintained that all payments to the employees listed were appropriate." Rule 1925(a) Op. at 4, R.R. at 909a. Further, "[f]ailure to mention testimony does not compel a conclusion that it was not considered."[17] *Colt Indus. v. Workmen's Comp. Appeal Bd.*, 415 A.2d 972, 974 (Pa. Cmwlth. 1980).

Importantly, "it [is] within the province of the trial court to weigh conflicting testimony, to make credibility determinations and to make findings of fact based on those assessments[.]" *In re Dauphin Cnty. Tax Claim Bureau*, 834 A.2d 1229, 1232 (Pa. Cmwlth. 2003). "This Court is bound by the trial court's findings of fact unless those findings are not based on competent evidence in the record. Likewise, we are bound by the trial court's credibility determinations." *Big Bass Lake Cmty. Ass'n*

---

[17] Koszarek also contends that the trial court automatically discounted her testimony because she was not presented as an expert witness. *See* Koszarek Amended Br. at 54. There is nothing in the trial court's opinion indicating such. Rather, in its Rule 1925(a) Opinion, the trial court referenced Koszarek's testimony and noted that she did not present corroborating or expert witness testimony. *See* Rule 1925(a) Op. at 4, R.R. at 909a. It did **not** state that simply because Koszarek was not presented as an expert witness, her testimony was less compelling.

16

*v. Warren*, 23 A.3d 619, 625 (Pa. Cmwlth. 2011) (citation omitted). "A trial court's factual findings will not be disturbed on appeal unless 'the record affords them inadequate evidentiary support or when they have been premised upon erroneous inferences and deductions . . . from the evidence.'" *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137, 1147 n.16 (Pa. Cmwlth. 2008) (quoting *Moyerman v. Glanzberg*, 138 A.2d 681, 684 (Pa. 1958)). "That the record may contain evidence that supports a different result than that reached by the [fact finder] is irrelevant so long as the record contains substantial evidence supporting the [fact finder's] decision." *Lyft, Inc. v. Pa. Pub. Util. Comm'n*, 145 A.3d 1235, 1240 (Pa. Cmwlth. 2016); *see also Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemnification Fund*, 82 A.3d 485 (Pa. Cmwlth. 2013). "On appeal, it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact." *Bold Corp. v. Cnty. of Lancaster*, 801 A.2d 469, 477 (Pa. 2002) (quoting *Torbik v. Luzerne Cnty.*, 696 A.2d 1141, 1145 (Pa. 1997)).

Here, according to the trial court, "[t]he facts established that [the Authority] overpaid Koszarek in the total amount of \$26,399.77[,]" R.R. at 911a-912a, and the overpayments were "proved by clear and substantial evidence[,]" R.R. at 910a. The trial court further determined:

> [The Authority] received no return additional benefit but believed that the payments were properly calculated and due to Koszarek in exchange for her employment as previously agreed. This was not the case, however, as [the Authority] later discovered after Koszarek left. Koszarek was neither entitled to[,] nor in any way earned[,] the extra money she received and therefore must pay restitution to [the Authority] as a result.

*Id.* at 7, R.R. at 912a.

Koszarek argues:

17

The analysis and conclusions of . . . Barbagallo, upon which [the Authority] bases its case, were seriously flawed and subject to dispute at trial, both *through cross*[-]*examination and by* [] *Koszarek on rebuttal*, demonstrating that [] Barbagallo did not rely on the entirety of the Authority's policies and procedures. He admitted, for instance that a missing wage letter and sticky note referenced at note 8 of his own report was not considered. He admitted that he was not aware that comp [sic] time was usually accounted for as regular pay due to limitations in the computerized payroll accounting system. He admitted that he did not consider that vacation pay was approved by Koszarek's supervisors and the Board [] upon her resignation. He admitted regarding sick time that he did not consider Authority policy as developed from prior grievance decisions or the approval of [] Koszarek's retirement letter. He admitted that he did not consider that [] Koszarek's comp [sic] time was approved by her supervisor and the Board and further admitted that he relied on the hearsay interpretation of collective bargaining agreements that directly contradicted the plain language of those agreements. And he admitted that he had no knowledge concerning the accounting system and how it was managed.

Koszarek Amended Br. at 53-54 (emphasis added).

"It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, [determinations regarding] the credibility and weight attributed to those conclusions . . . reside in the sole province of the trier of fact[.]" *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1161 (Pa. 2010).

'An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.' Pa.R.E. 703; *In re D.Y.*, 34 A.3d 177, 182-83 (Pa. Super. 2011) . . . . 'If the expert states an opinion the expert must state the facts or data on which the opinion is based.' Pa.R.E. 705 and *Comment* (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence). '**Once expert testimony has been**

18

> **admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination**.' *In re D.Y.*, [34 A.3d] at 183. **Opposing counsel bears the burden of exposing and exploring** 'any weaknesses in the **underpinnings of the expert's opinion**.' *Id.*

*Commonwealth v. Prendes*, 97 A.3d 337, 358 (Pa. Super. 2014) (emphasis added), *impliedly overruled on other grounds by Commonwealth v. Hvizda*, 116 A.3d 1103, 1106 (Pa. 2015).

Here, Barbagallo testified regarding the basis for his expert opinion that Koszarek had been overpaid. He explained: "[W]e looked at the hiring documents and contract, and we looked at the dates involved. And what we did was look at what was paid during those dates in accordance with [B]oard actions, hiring letter, contract, [sic] and determine whether she was overpaid in accordance with those documents." R.R. at 756a. The alleged inadequacies of his analysis were explored on cross-examination. Notably, "[e]xpert testimony is competent to support a finding of fact even where the witness admits to uncertainty, doubt, reservation, or a lack of information with regard to medical and scientific details; provided that the witness does not recant the opinion or belief first expressed." *Corcoran v. Workers' Comp. Appeal Bd. (Capital Cities/Times Leader)*, 725 A.2d 868, 872 (Pa. Cmwlth. 1999).

> In the instant matter,
>
> through cross-examination, [Koszarek] had the opportunity, and in fact did point out, what [she] perceived to be errors . . . in the [Authority's] expert's testimony. It is the function of the [fact finder] to determine and resolve the discrepancies in the testimony of the expert witnesses. The **weight of the testimony may be affected, but not its admissibility**.

*In re Condemnation by Dep't of Transp.*, 501 A.2d 1172, 1175 (Pa. Cmwlth. 1985) (emphasis added). The trial court, as it was empowered to do, weighed the evidence, including Barbagallo's testimony both on direct and cross-examination, and concluded

that the Authority had proven Koszarek's overpayments. Although the trial court did not explicitly declare Barbagallo's testimony credible, it unambiguously credited the Authority's evidence (which included Barbagallo's testimony calculating the overpayments) as "clear and substantial[.]" Rule 1925(a) Op. at 5, R.R. at 910a. Barbagallo's testimony and expert report,[18] along with that of the Authority's other witnesses is substantial evidence which supports the trial court's decision. Thus, this Court is bound by the trial court's factual findings. Further, because "the record adequately supports the trial court's reasons and factual basis, the [trial] court did not abuse its discretion." *Harman*, 756 A.2d at 1123 (quoting *Coker*, 625 A.2d at 1187).

Next, Koszarek argues that the trial court erred or abused its discretion by rejecting Koszarek's counterclaim based on the Settlement Agreement. According to Koszarek, "[her] counter[]claims concern actions by the Authority that clearly occurred after she signed the release of all claims. This [] Koszarek could not have waived as a matter of law." Koszarek Amended Br. at 56.

In consideration of the $70,000.00 settlement payment, **Koszarek** agreed, *inter alia*, to

> refrain from filing any future claims, complaints, or lawsuits[19] with any federal, state, or local court, administrative body or agency against [the Authority] and any entity or individual related to [the Authority] . . . arising from Koszarek's employment, her separation from employment, any employment-related or non-employment related conduct by [the Authority], or any entity related to [the Authority] in or outside any workplace(s), or for any other reason, whether currently known or unknown.

R.R. at 477a.

---

[18] The trial court admitted Barbagallo's expert report into evidence on agreement of both counsel. *See* R.R. at 748a.

[19] In exchange for the release of her claims, the Authority did not similarly agree to refrain from filing future claims, complaints, or lawsuits against Koszarek.

Further, Koszarek

> irrevocably and unconditionally release[d], acquit[ted], h[e]ld harmless and forever discharge[d the Authority] . . . from any and all causes of action, suits, appeals, damages . . . . **whether known or unknown**, **now existing or subsequently arising** . . . which were brought or could have been brought, whether or not filed, **pertaining to** (1) the events and transaction that are the subject matter of the [a]ction; (2) **Koszarek's employment with and separation from** [**the Authority**]; and/or (3) any and all claims based on state, federal or local laws . . . arising out of or related to any wage, compensation, or bonus payments claim resulting from Koszarek's employment with [the Authority], separation from employment with [the Authority], or [] due to any employment-related or non-employment conduct in or outside of any of the [Authority] workplace(s), or for any other reason, whether known or unknown as of the effective date of this release . . . .

R.R. at 477a-478a (emphasis added).[20]

> The Pennsylvania Supreme Court has explained:

> '[A] long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given.' *Restifo v. McDonald*, . . . 230 A.2d 199, 201 ([Pa.] 1967).

> Waivers which release liability for actions not accrued at the time of the release are generally only invalid if they involve

---

[20] The Settlement Agreement also contains a Non-Disparagement provision which provided in relevant part:

> (a) . . . [W]ithout the prior written consent of [the Authority], neither Koszarek nor any person acting on behalf of or under her direction or control, shall provide any testimony, statements, declarations . . . or shall otherwise assist, any person adverse to [the Authority], . . . in connection with any legal proceeding or investigation . . . .

> (b) Koszarek agrees that she will not take any action or make any statements, verbal or written, which disparage [the Authority.]

R.R. at 480a. There is no similar language constraining the Authority.

21

> future actions entirely different than ones contemplated by
> the parties at the time of the release.

*Bowman v. Sunoco, Inc.*, 65 A.3d 901, 909 (Pa. 2013).

In her first counterclaim, Koszarek alleged that the Authority violated whistleblower laws by retaliating against her and filing unfounded complaints with the Ethics Commission and the District Attorney's Office, and reporting the allegations to the press. Specifically, Koszarek asserts:

> The post-release activities about which [] Koszarek complained in her counterclaim included *continuing to cooperate* with the District Attorney's [Office's] investigation **after** the June 10, 2015 release, and up to March 28, 2016, when the District Attorney['s Office] declined to prosecute. The Authority also referred [] Koszarek for prosecution before the . . . Ethics Commission sometimes [sic] in April of 2015, but *continued to cooperate* with the [Ethics] Commission and push for prosecution until the [Ethics] Commission dismissed the investigation with prejudice on its own motion on May 16, 2016, well **after** the June 10, 2015 release was executed. Moreover, well **after** the release was signed, *an unflattering article concerning [] Koszarek appeared on February 19, 2016 in Levittownnow.com that reported on the nonpublic Barbagallo [r]eport*, which had been secretly released to it by someone at the Authority with access to that internal report.[21] And *Board Member Richard Altmiller published an opinion editorial in the very same newspaper on July 18, 2016, in which he publicly regretted that the District Attorney['s Office] had refused to prosecute [Koszarek[22]]* -- yet another action that occurred well after the June 10, 2015 execution of the release. *Further, the Authority's actions to sue [] Koszarek occurred well after the release was signed.*

---

[21] Contrary to Koszarek's assertion, there is no record evidence demonstrating that "someone at the Authority" released Barbagallo's report to Levittownnow.com. Koszarek Amended Br. at 56.

[22] In her Reply Brief, Koszarek similarly contends that the Authority "**allowed** the release of confidential material to the press which resulted in publication of an unflattering article about [Koszarek], and **allowed** one of its board members to publish an aggressively critical op-ed piece regarding [Koszarek.]" Koszarek Reply Br. at 3 (emphasis added). There is no record evidence establishing that the Authority consented to or otherwise allowed the release of Barbagallo's report, or that the Board participated in its member's decision to publish the July 18, 2016 opinion editorial.

Koszarek Amended Br. at 55-56 (italic emphasis added).

In the Settlement Agreement, Koszarek irrevocably and unconditionally released the Authority "from any and all causes of action, suits, appeals, damages . . . **whether known or unknown**, **now existing or subsequently arising** . . . which were brought or could have been brought, whether or not filed, **pertaining to** . . . **Koszarek's employment with and separation from** [**the Authority**.]" R.R. at 478a (emphasis added). The Authority notified both the District Attorney's Office and the Ethics Commission in **April of 2015** of the alleged overpayments, before Koszarek signed the Settlement Agreement on June 10, 2015.[23] *See* R.R. at 496a, 501a. Whether or not Koszarek was aware of the Authority's conduct in contacting the District Attorney's Office or the Ethics Commission, Koszarek released the Authority from liability therefor. Further, the Authority's continued cooperation in preexisting, ongoing investigations was consistent with its duty to "benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity . . . [,]" 53 Pa.C.S. § 5607(b)(2), and with its fiscal responsibilities under Section 5612 of the Act, and is not indicative of retaliatory behavior.

Given that the Authority is a public entity, Koszarek should have contemplated the possibility that it might make public and release relevant information concerning investigations and any money it believed it was owed.[24] Except for the release of the Barbagallo report and the opinion editorial, the actions which form the basis for Koszarek's retaliation counterclaim were in process when she signed the

---

[23] Koszarek characterizes the Authority's "**continuing**" cooperation with the District Attorney's Office and Ethics Commission investigations after Koszarek signed the Settlement Agreement as retaliatory. Koszarek Amended Br. at 55 (emphasis added). Koszarek's position necessarily acknowledges that both investigations and the Authority's cooperation therewith began before Koszarek signed the Settlement Agreement.

[24] Neither the February 19, 2016 article in Levittownnow.com nor Board Member Richard Altmiller's July 18, 2016 opinion editorial identified Koszarek by name.

Settlement Agreement. Accordingly, the trial court properly dismissed Koszarek's first counterclaim.

In Koszarek's second counterclaim, she alleged that the Authority abused the legal process by, *inter alia*, **filing the instant lawsuit** after both the District Attorney's Office and the Ethics Commission determined that the Authority's allegations were meritless, for the alleged purpose of retaliating against her for filing and settling her discrimination and whistleblower complaints, and for having raised complaints with the Authority about Rajput. *See* R.R. at 64a.

This Court acknowledges:

'The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'' *Rosen v. Am*[.] *Bank of Rolla*, . . . 627 A.2d 190, 192 ([Pa. Super.] 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 682 [Am. Law Inst. (1977)]). 'To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and harm has been caused to the plaintiff.' *Id.* . . . The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. *Id.* In support of this claim, the [plaintiff] must show ''some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'' *Di Sante v. Russ Fin*[.] *Co.*, . . . 380 A.2d 439, 441 ([Pa. Super.] 1977) (quoting PROSSER, TORTS, § 100, at 669 (2d [e]d. 1955)).

*Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998).

It is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive. Rather, *there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or*

24

> *compel the plaintiff to take some collateral action.* 'There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' *Shaffer v. Stewart*, . . . 473 A.2d [1017,] 1019 [(Pa. Super. 1984)][.]

*Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa. Super. 1994) (emphasis added; citations omitted).

Here, the Authority successfully pursued the instant action against Koszarek to recover money which the trial court found the Authority was rightfully owed.[25] Notably, of all the employee overpayments Koszarek made, the overpayments she made to herself constituted the most significant and costly loss of the Authority's funds. *See* R.R. at 521a-522a. Even assuming, arguendo, that the Authority pursued this action with "bad or malicious intentions," it has "done nothing more than carry out the process to its authorized conclusion[.]" *Id.* Thus, the trial court properly dismissed Koszarek's abuse of process claim.[26]

Finally, Koszarek argues that the trial court erred or abused its discretion by concluding that the Authority recouped overpayments from other employees. Notably, the record contains a $47.38 check dated April 21, 2015 from Rajput reimbursing the Authority for his overpayment.[27] *See* R.R. at 570a. The record evidence further reflects that on April 25, 2018, the Authority sent letters to several employees notifying them of payroll overpayments and requesting repayment. *See* R.R. at 562a-569a. As addressed *supra*, under restitution principles, the Authority was entitled to recover alleged overpayments to Koszarek, if such overpayments were proven. This recovery is permissible, regardless of whether the Authority sought to

---

[25] In fact, Koszarek admitted that she had overpaid herself $906.30.

[26] "An appellate court is permitted to affirm an order of the trial court on other grounds if the correct result was reached." *Citimortgage, Inc. v. KDR Invs., LLP*, 954 A.2d 755, 756 n.2 (Pa. Cmwlth. 2008).

[27] The memo line on the check describes the payment as "[r]eimbursement of overpayment of wages 2012-2014." R.R. at 570a.

recover overpayments from other employees and whether those employees actually reimbursed the Authority. In fact, the Authority pursued investigations of the individual allegedly responsible for the overpayments. Upon confirming such overpayments, the Authority sought Koszarek's repayment before seeking repayment from other employees.

Finally, with respect to Koszarek's assertion that the trial court erred by concluding that the Authority recouped overpayments from other employees, such is harmless error because the Authority did recoup repayment from one employee and it is not relevant or determinative with respect to the Authority's rights to restitution from Koszarek for the overpayments. Accordingly, this Court discerns no reversible error or abuse of discretion.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Bucks County Joint      :
Municipal Authority      :
     :
     v.      :
     :
Patricia Koszarek,      :    No. 686 C.D. 2020
         Appellant      :

## O R D E R

AND NOW, this 11th day of December, 2020, the Bucks County Common Pleas Court's April 6, 2020 decision is affirmed. Patricia Koszarek's Application to File Post-Argument Communication is granted.

_____
ANNE E. COVEY, Judge