# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Downingtown Area School District | : | CASES CONSOLIDATED |
| | : | |
| v. | : | No. 92 C.D. 2022 |
| | : | |
| Chester County Board of Assessment Appeals | : | |
| | : | |
| Tax Parcel No.:    33-5-43.3 | : | |
| | : | |
| Appeal of: Marchwood Apartments Owners LLC | : | |
| | : | |
| Downingtown Area School District | : | |
| | : | |
| v. | : | No. 93 C.D. 2022 |
| | : | Argued: March 7, 2023 |
| Chester County Board of Assessment Appeals | : | |
| | : | |
| Tax Parcel No.:    33-5-43.2 | : | |
| | : | |
| Appeal of: Marchwood Apartments Owners LLC | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  October 6, 2023

Marchwood Apartments Owners LLC (Taxpayer) appeals an order of the Court of Common Pleas of Chester County (trial court), granting the tax assessment appeal filed by Downingtown Area School District (School District).[1]  In

---

[1] The cases were consolidated by the trial court.

doing so, the trial court rejected Taxpayer's constitutional challenges to the School District's appeal of its assessment. Taxpayer argues that the trial court erred, asserting that the School District's tax assessment appeal policy, both on its face and as applied, violates the Equal Protection Clause of the United States Constitution[2] and the Uniformity Clause of the Pennsylvania Constitution.[3] Likewise, Section 8855 of the Consolidated County Assessment Law, 53 Pa. C.S. §8855,[4] violates the Equal Protection Clause and the Uniformity Clause because it does not require taxing authority assessment appeals to be countywide. Taxpayer contends that the School District's unconstitutional assessment appeal has left the Marchwood apartment complex overassessed when compared to other apartment complexes in Chester County, with which it must compete for tenants. For the reasons to follow, we reverse the trial court.

## Background

Taxpayer owns the Marchwood apartment complex, which consists of two separate tax parcels located in Uwchlan Township, Chester County,

---

[2] U.S. CONST. amend. XIV. The Equal Protection Clause provides, in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Id.*

[3] PA. CONST. art. VIII, §1. It states: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." *Id.*

[4] It states:

> A taxing district shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact. A taxing district authority may intervene in any appeal by a taxable person under section 8854 (relating to appeals to court) as a matter of right.

53 Pa. C.S. §8855.

Pennsylvania. One parcel is 6.1 acres, and the other parcel is 37.5 acres. On the 2 parcels are 40 detached buildings with 504 residential apartment units, a leasing office/clubhouse, a maintenance shop, and a vacant building.

In 2012, the School District established a policy to appeal any real property assessment that "may potentially result in total annual additional tax revenue of $10,000 or more[.]" Reproduced Record at 263a (R.R. __). As adopted, the policy did not limit the number of appeals the School District may file in a tax year.

In 2019, the School District hired Valbridge Property Associates (Valbridge) to "identify up to 15 properties" that were "likely to be under[]assessed by an amount sufficient to meet the district's selection criteria." R.R. 261a. It took Valbridge "approximately one week" to identify 15 underassessed properties that met the policy's $10,000 monetary threshold for an assessment appeal. *Id*. The School District appealed 15 property tax assessments identified by Valbridge and then added another, *i.e.*, the Marchwood apartment complex. The Chester County Board of Assessment Appeals denied the School District's appeal of the Marchwood apartment complex, and the School District appealed.

The trial court conducted a *de novo* hearing on the School District's appeal. Notably, the parties stipulated to the fair market value of the Marchwood apartment complex for tax years 2019, 2020, and 2021. As a consequence, the evidence concerned Taxpayer's constitutional challenge to the School District's assessment appeal policy and implementation thereof.

Taxpayer presented the testimony of Reaves Lukens, an employee of Valbridge, as on cross-examination. Lukens explained that he was tasked with reviewing property assessments in the School District and choosing 15 assessments

3

to appeal, *i.e.*, a "manageable" number, considering manpower and resources. Notes of Testimony, 11/17/2021, at 16 (N.T. __); R.R. 39a. Lukens began the assignment by downloading the current tax assessments of both commercial and residential properties. However, Lukens excluded residential properties less than 3,500 square feet in size. He did not look at "the very small houses" because they would not meet the School District's monetary threshold of $10,000 even "if they had an assessment of zero." N.T. 30; R.R. 53a. As for commercial properties, he separated them into categories (*e.g.*, retail or industrial) and looked at their average assessments.

Lukens testified that he "did not have a hard and fast rule with respect to the methodology [he] used" to identify properties. N.T. 31; R.R. 54a. He considered the potential net return in order "to maximize the return to the School District." N.T. 26, 32; R.R. 49a, 55a. Once he identified 15 assessments, Lukens stopped his review and gave his list to the School District.[5] Lukens confirmed that many other property assessments met the School District's monetary threshold.[6] He

---

[5] Initially, the Marchwood apartment complex was not on the list. N.T. 26; R.R. 49a.

[6] At the hearing, Lukens testified as follows:

> Q. Now, you would agree with me that there are many more than 15 properties that satisfy the $10,000 threshold set forth in the [] School District policy, correct?
> [Lukens]. I would suspect that there are.
> Q. And indeed do you recall testifying at your deposition that you believed it could be more than 100?
> [Lukens]. It could be.
> Q. And do you agree with that statement?
> [Lukens]. It could be.
>
> * * * *
>
> Q. And isn't it correct that among those properties that you considered that are in the district, that there were likely residences that would satisfy the $10,000 threshold set forth in the [] School District policy?
> [Lukens]. It's possible.
> Q. Well, you say it's possible. Do you believe that it's likely?

also acknowledged that there was a range in the amount of "pickup" in fair market value needed to meet the $10,000 threshold, depending on the municipality. For example, in Downingtown Borough, a pickup of $497,262 in the fair market value was needed to hit the $10,000 threshold, but a pickup of $617,831 was needed in Bradford Township. N.T. 34-35; R.R. 57a-58a.

Taxpayer presented its expert, Peter A. Angelides, Ph.D.,[7] who testified about his analysis of the School District's assessment appeals for the 2019 and 2020 tax years. He testified that owner-occupied residential properties constituted 84.2% of the properties in the School District. N.T. 77; R.R. 100a. He further noted that the School District's $10,000 monetary threshold has "a larger exclusionary effect on single[-]family properties than it does on apartments, commercial or industrial properties." N.T. 83; R.R. 106a. Nevertheless, Angelides believed "a decent or large number of single[-]family properties" were underassessed and could generate an additional $10,000 in annual tax revenue. N.T. 84-85; R.R. 107a-08a. He identified five residential properties that were "worthy of further investigation" to determine whether they would meet the policy's threshold amount but were not appealed. N.T. 91; R.R. 114a.

On cross-examination, Angelides explained that he looked at recent sales prices to find properties that may meet the School District's monetary threshold. He acknowledged that some of the five residential properties that he

[Lukens].        I would assume there are some.
N.T. 25-26; R.R. 48a-49a.

[7] Angelides is the President of Econsult, an urban economics environment public policy consulting firm located in Philadelphia, Pennsylvania. N.T. 64; R.R. 87a. Angelides holds a master's degree in city planning and a Ph.D. in economics. He also holds a certification from the American Institute of Certified Planning, the proficiency in his profession. N.T. 65; R.R. 88a.

identified as potentially underassessed were subject to Act 319,[8] which meant they were enrolled in programs that lowered their taxes. The Clean and Green program[9] "provides a lower tax rate appropriate for land devoted to farming and forest reserve purposes" by enabling landowners to apply for preferential assessments that base property taxes on use rather than fair market value. *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504, 505 (Pa. Cmwlth. 1998).

The trial court did not allow Taxpayer to present expert evidence that other apartment complexes in Chester County were assessed at a lower percentage of fair market value under the State Tax Equalization Board[10] common level ratio. On average, other apartment complexes were assessed at 34.23% of their fair market value. By contrast, the Marchwood apartment complex was assessed at 49.3% or 47% of its fair market value, depending on the year. The trial court also denied Taxpayer the opportunity to introduce a stipulation regarding the range of assessment appeal policies adopted by school districts in the county.

The depositions of David Matyas, the School District's Business Manager; David Kring, School Board Director; Alicia Krebs, the School District's Accounting Supervisor; and Jane Bertone, President of the School Board, were admitted into evidence. Therein, these School District personnel testified that they did not know how Lukens chose the 15 properties for appeal. Matyas Dep. at 16; R.R. 380a; *see also* Krebs Dep. at 18; R.R. 452a. The Marchwood apartment complex was added to the initial list of 15 appeals by decision of Valbridge and the

---

[8] Act 319 refers to the Pennsylvania Farmland and Forest Land Assessment Act of 1974, commonly known as the Clean and Green Law, Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§5490.1-5490.13.

[9] Section 3 of the Clean and Green Law, 72 P.S. §5490.3.

[10] *See* Act of June 27, 1996, P.L. 403, *as amended*, added by the Act of April 18, 2013, P.L. 4, 71 P.S. §§1709.1507-1709.1508.

School District's solicitor. Matyas Dep. at 18; R.R. 382a; *see also* Krebs Dep. at 28; R.R. 462a. The School District rejected one commercial property for a tax assessment appeal for the stated reason that the owner was represented by a "very aggressive" attorney. N.T. 41-42; R.R. 64a-65a.[11] Bertone recollected that the School District has appealed one residential property assessment, explaining she was "surprised the house could generate that much more revenue." Bertone Dep. at 20; R.R. 490a.

## Trial Court Decision

The trial court found that the School District's policy did not instruct the School District "to consider the type or nature of a property" when deciding whether to appeal a property's assessment and did not limit the number of appeals that can be taken in a given year. Trial Court Op. at 2. Since the implementation of its policy in 2012, the School District has filed an assessment appeal of one residential property, in addition to its commercial property assessment appeals.

The trial court characterized Section 8855 of the Consolidated County Assessment Law as granting a school district the right to appeal assessments, and it "does not restrict the methodology" it uses to choose properties to appeal, so long as the school district exercises its discretion within constitutional boundaries. Trial Court Op. at 5. The trial court rejected Taxpayer's argument that there must be a countywide tax assessment appeal to avoid placing its apartment complex at a competitive disadvantage. In any case, school districts in the same county are free to adopt very different assessment appeal policies.

---

[11] Lukens' list included a parcel owned by Lowes but incorrectly identified the owner as P-Patch. In conversation with the School District, Lukens recommended that they "skip the Lowes" parcel because its attorney "is very aggressive." R.R. 269a. Lukens recommended that the School District proceed with appealing the assessment of the parcel that was actually owned by P-Patch. *Id*.

7

The trial court rejected Taxpayer's as-applied constitutional challenge to the School District's appeal of its assessment, concluding that allowing the Marchwood apartment complex to remain underassessed would be discriminatory. It reasoned that the "'intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property.'" Trial Court Op. at 6 (quoting *Allegheny Pittsburgh Coal Company v. County Commissioners of Webster County*, 488 U.S. 336 (1989)). Further, the "'equal protection clause . . . protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class'" *Id.* at 6 (quoting *Hillsborough v. Cromwell*, 326 U.S. 620 (1946)). The trial court concluded that the School District's appeal policy corrects this "very wrong" because if the School District allowed Taxpayer's underassessment to continue, the rights of other taxpayers would be violated. *Id.* at 7. Accordingly, the trial court held the School District's tax assessment appeals policy complied with the Equal Protection Clause.

The trial court next rejected Taxpayer's contention that the School District's policy violated the Uniformity Clause, noting that "absolute equality and perfect uniformity in taxation are not required." Trial Court Op. at 7. The $10,000 threshold was facially neutral and did not, as Taxpayer argued, effectively eliminate appeals of residential properties, thereby creating unconstitutional property sub-classifications. The trial court found Taxpayer's evidence irrelevant to the extent it showed different treatment on the basis of property sub-classification because the School District had appealed at least one residential property. It further opined that a monetary threshold is permitted under precedent, citing *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962 (Pa. 2017);

8

*GM Berkshire Hills LLC v. Berks County Board of Assessment*, 257 A.3d 822 (Pa. Cmwlth. 2021) (*GM Berkshire Hills I*), *aff'd by evenly divided court*, 290 A.3d 238 (Pa. 2023) (*GM Berkshire Hills II*); and *Punxsutawney Area School District v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed October 29, 2019) (unreported).

Having rejected Taxpayer's constitutional challenges, the trial court ordered that the assessment of the Marchwood apartment complex be increased to comport with its new fair market value, which value was established in the parties' stipulation.

## Appeal

On appeal,[12] Taxpayer raises three issues. First, Taxpayer argues that the School District's tax assessment appeal policy violated the Equal Protection Clause and the Uniformity Clause. Second, Taxpayer argues that Section 8855 of the Consolidated County Assessment Law[13] is unconstitutional, facially or as applied, because it does not require taxing authority appeals to be uniform within the entire county, and it does not state a standard for the initiation of assessment appeals. Taxpayer contends that the appropriate solution to underassessed properties is for

---

[12] This Court reviews a trial court's decision in a property tax assessment appeal to determine whether the trial court abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence. *GM Berkshire Hills I*, 257 A.3d at 828 n.8.

[13] It states:

> A taxing district shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact. A taxing district authority may intervene in any appeal by a taxable person under section 8854 (relating to appeals to court) as a matter of right.

53 Pa. C.S. §8855.

9

the legislature to mandate countywide reassessments.[14]  Third, Taxpayer argues that the Marchwood apartment complex must be assessed at the same common level ratio as other apartment complexes in the county in order to comply with the Uniformity Clause.

**Analysis**

We begin with a review of the law.

The Uniformity Clause of the Pennsylvania Constitution states as follows:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

PA. CONST. art. VIII, §1.  The Uniformity Clause ensures that "a taxpayer should pay no more or no less than his proportionate share of the cost of government."  *In re Sullivan*, 37 A.3d 1250, 1254-55 (Pa. Cmwlth. 2012) (quoting *Deitch Company v. Board of Property Assessment, Appeals and Review of Allegheny County*, 209 A.2d 397, 401 (Pa. 1965)).  The value of the Uniformity Clause has been summarized as follows:

> While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor.  This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject; but it is a fundamental principle written into the Constitutions and statutes of almost every state in this country.

*Delaware, L. & W. Railway Company's Tax Assessment*, 73 A. 429, 430 (Pa. 1909).

---

[14] Taxpayer asserts that Pennsylvania is one of seven states that do not require a "broad-based" periodic assessment.  Taxpayer Brief at 35.  Instead, Pennsylvania uses a base year system, which leads to the problem of underassessed properties.

Within a taxing district, all real property "is a single class." *Valley Forge*, 163 A.3d at 975. For this reason, "the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner." *Id.* In *Clifton v. Allegheny County*, 969 A.2d 1197, 1212 (Pa. 2009), our Supreme Court established that real property is "[a] classification" and that the Uniformity Clause requires "all real estate [be] treated as a single class entitled to uniform treatment."

The General County Assessment Law[15] authorizes any taxing authority to appeal a real property assessment. Section 520 states as follows:

> The corporate authorities of any county, city, borough, town, township, school district or poor district, which may feel aggrieved by any assessment of any property or other subject of taxation for its corporate purposes, shall have the right to appeal therefrom in the same manner, subject to the same procedure, and with like effect, as if such appeal were taken by a taxable with respect to his property.

72 P.S. §5020-520. It is axiomatic that when a taxing authority, such as a school district, exercises its discretion to appeal a real property assessment, it must do so within "constitutional boundaries." *Valley Forge*, 163 A.3d at 980. Where a taxing authority appeals only "the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type," it acts outside applicable constitutional boundaries. *Id.* at 978.

In *Valley Forge*, 163 A.3d 962, several taxpayers challenged the school district's program of appealing commercial property tax assessments but not residential property assessments. The taxpayers sought to enjoin the school district's tax assessment appeal policy as violative of the Uniformity Clause. The common

---

[15] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§5020-1-5020-602.

11

pleas court dismissed the complaint as not stating a claim, and this Court affirmed. The Supreme Court reversed, holding as follows:

> [A] taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type – that is, its use as commercial, apartment complex, single-family residential, industrial, or the like.

*Id*. at 978. The Supreme Court further explained that "systematic disparate enforcement of the tax laws based on property sub-classification, is constitutionally precluded[.]" *Id*. The Supreme Court cautioned, however, that its holding should not be construed as an absolute prohibition of a neutral selection criterion, such as a monetary threshold, so long as it was "implemented without regard to the type of property in question or the residency status of its owner." *Id*. at 979. The Supreme Court held that because the taxpayers' complaint alleged that only commercial property assessments were appealed, it stated a valid claim under the Uniformity Clause.

Following *Valley Forge*, this Court decided *GM Berkshire Hills I*. There, the school district's tax assessment appeals program used monthly reports generated by the State Tax Equalization Board to identify properties for appeal. These reports listed recent property sales in each county along with the sales prices and current assessed values. Beginning with recently sold properties, the school district applied the county's applicable common level ratio[16] of 68.5% to each recent sale price. If the difference between the recent sale price and the assessment was greater than $150,000, the school district pursued a tax assessment appeal. The

---

[16] Section 102 of The General County Assessment Law, defines the "common level ratio" as "the ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board pursuant to the act of June 27, 1947 (P.L. 1046, No. 447), referred to as the State Tax Equalization Board Law." 72 P.S. §5020-102.

12

$150,000 figure represented the threshold at which the revenue from a successful appeal would justify the cost of the legal and appraisal fees necessary for the school district to undertake the appeal.

GM Berkshire Hills LLC challenged the school district's use of recently sold properties as a basis for selecting properties for tax appeal. It argued that challenging the assessment of properties under new ownership violates both the federal Equal Protection Clause and Pennsylvania's Uniformity Clause. This Court rejected this claim. We concluded that using the recent sale of an assessed property did not create an improper classification, reasoning that such sales are used to establish market value in any assessment appeal. Further, the school district's use of recent property sales did not differentiate on the basis of property type. As such, the school district's method did not violate either the Equal Protection Clause or the Uniformity Clause. On further appeal, an equally divided Supreme Court affirmed this Court's decision that the school district's assessment appeal policy did not violate the Uniformity Clause. *GM Berkshire Hills II*, 290 A.3d at 240.

Then, in *Duffield House Associates, L.P. v. City of Philadelphia*, 260 A.3d 329 (Pa. Cmwlth. 2021), *appeal denied*, 279 A.3d 1185 (Pa. 2022), this Court affirmed an order of the Court of Common Pleas of Philadelphia County that enjoined the City of Philadelphia's reassessment of 41,730 commercial properties. We held that the City's decision to target certain sub-classifications of property for reassessment, while leaving other sub-classifications of property alone, violated the Uniformity Clause.

In *Duffield*, we distinguished *Kennett Consolidated School District v. Chester County Board of Assessment Appeals*, 228 A.3d 29 (Pa. Cmwlth. 2020), *appeal granted*, 240 A.3d 611, *appeal dismissed as improvidently granted*, 259 A.3d

13

890 (Pa. 2021). In *Kennett*, a taxpayer challenged a school district's tax assessment appeal of its property on the grounds that it violated the Uniformity Clause. In that case, the school district set a monetary threshold of a $1 million underassessment, which affected only commercial property assessments. We concluded that the appeal program was constitutional because it was not based on type of property but on the amount of the underassessment. The fact that the program's implementation resulted in an assessment appeal of only commercial properties did not establish a *per se* violation of the Uniformity Clause.

With these principles in mind, we turn to Taxpayer's first claim of error. Taxpayer argues that the School District's monetary threshold is inherently discriminatory and, thus, violates the Uniformity Clause. The $10,000 monetary threshold excludes most properties in the district, and since 2012, the School District has appealed the assessment of only a single residential property. Taxpayer argues that by arbitrarily limiting the number of tax assessment appeals to 15, even though there were many more properties that satisfied the monetary threshold, the School District has violated the Uniformity Clause. Finally, the School District's decision not to appeal an underassessed commercial property that met the monetary threshold for the stated reason that its attorney was "very aggressive" created an intentional discrimination in favor of one taxpayer to the expense of others. Taxpayer Brief at 26.

The School District responds that the law does not limit the selection process for implementing a neutral monetary threshold for assessment appeals, and it is not discrimination to appeal an incorrect assessment. In support, the School District cites *Weissenberger v. Chester County Board of Assessment Appeals*, 62 A.3d 501 (Pa. Cmwlth. 2013). There, a group of school districts "hired a consultant

14

to evaluate a different class each year, one year looking at shopping centers, then apartment complexes, with other evaluations expected each year in the future." *Id.* at 507. This Court held that the school district's piecemeal approach to assessment appeals did not "demonstrate deliberate, purposeful discrimination." School District Brief at 17 (quoting *Weissenberger*, 62 A.3d at 508-09). The School District also cites *East Stroudsburg Area School District v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed October 17, 2019) (unreported), and *East Area School District v. Dallan Acquisitions, LLC* (Pa. Cmwlth., No. 529 C.D. 2018, filed October 17, 2019) (unreported) (holding that implementation of a neutral monetary threshold for assessment appeals by cost-benefit analysis did not offend the Uniformity Clause).

Our Supreme Court has held that under the Uniformity Clause, "similarly situated taxpayers should not be deliberately treated differently by taxing authorities." *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 913 A.2d 194, 201 (Pa. 2006). Thereafter, in *Valley Forge*, 163 A.3d at 979, the Supreme Court suggested that a monetary formula for filing assessment appeals did not offend the Uniformity Clause, but that was not the holding. *See GM Berkshire Hills II*, 290 A.3d at 253 (Donohue, J., opinion in support of reversal) (clarifying that the comment in *Valley Forge* about the potential propriety of a monetary threshold was *dicta*). In short, the Pennsylvania Supreme Court has not decided that a purely monetary threshold is constitutional under the Uniformity Clause, as assumed by the trial court. Nevertheless, this Court has held that a school district assessment appeal policy that uses a monetary threshold together with recent property sales to choose its assessment appeals passes constitutional muster. *See GM Berkshire Hills I*, 257 A.3d 822.

15

Here, the School District policy uses a monetary threshold for identifying properties for tax assessment appeal, which may be constitutional. However, the School District has implemented its policy in an arbitrary fashion. First, it chose to appeal the assessments of 16 properties even though it knew that there were many more properties in the School District that satisfied the monetary threshold. Second, Lukens testified that he "did not have a hard and fast rule with respect to the methodology [he] used" to identify properties, and he could not elucidate these flexible "rules" that he used. N.T. 31; R.R. 54a. He could only state that he was "trying to maximize the return to the School District." N.T. 26, 32; R.R. 49a, 55a. Third, the Marchwood apartment complex was not on Lukens' list of properties identified for an assessment appeal, and the School District offered no explanation for the later selection of the Marchwood apartment complex for an assessment appeal. Fourth, the School District rejected a commercial property that met the monetary threshold for the sole reason that its counsel was aggressive. This selection criterion is discriminatory on its face and unacceptable as a matter of sound public policy.

The School District's reliance on *East Stroudsburg* and *East Area School District* is misplaced. The implementation of the tax assessment appeal policy was not at issue in these cases but, rather, the stated terms of the policy. Additionally, *Valley Forge* disapproved a taxing authority appeal policy based on property classification such as the one adopted in *Weissenberger*, where the school district chose its assessment appeals by property classification, *e.g.*, shopping centers one year, then apartment complexes the next year. Rather, the Supreme Court has established that "a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-

16

classification is drawn according to property type—that is, its use as commercial, apartment complex, single-family residential, industrial, or the like." *Valley Forge*, 163 A.3d at 978.

The School District's monetary formula based upon a $10,000 increase in tax revenue may be facially neutral and may be constitutional, as suggested in *Valley Forge*, 163 A.3d 962. That remains to be determined. *See Berkshire Hills II*, 290 A.3d at 253 (Donohue, J., opinion in support of reversal). However, the School District's decision to undertake a piecemeal implementation of this policy, deliberately leaving many other underassessed properties alone, has created disparate treatment that is anathema to the Uniformity Clause. This random application of a monetary threshold created a lack of uniformity in violation of the Pennsylvania Constitution.

**Conclusion**

The purpose of any assessment appeal, whether by the taxpayer or the taxing authority, is to correct mistakes in the most recent countywide assessment. It is not intended to function as a substitute for the countywide assessment required by law. In *GM Berkshire Hills I*, 257 A.3d 822, this Court upheld an assessment policy that was triggered by a change in circumstance, *i.e.*, a sale that showed the most recent countywide assessment amount for that particular property to be in error. Further, the policy was uniformly applied to all properties meeting the monetary threshold. Even so, our holding received divided support from our Supreme Court.

Taxing authority appeals yield more revenue for the taxing authority. However, the purpose of a countywide reassessment is to correct all mistakes, including those that fall upon overassessed properties. When the taxing authority attempts an ersatz and piecemeal correction of underassessments, it is the sole

17

beneficiary. Under the Uniformity Clause, however, some of that correction should inure to the benefit of the overassessed taxpayer.[17]

Here, the School District's stated policy was to appeal assessments that could potentially generate more than $10,000 in tax revenue. This will garner for the School District the entire benefit and leave overassessed property owners bearing an unfair share of the tax burden. Even so, the School District did not even attempt to capture each and every assessment that would meet the monetary threshold. *Cf. Kennett*, 228 A.3d 29. The monetary threshold may have been neutral, but the implementation, perhaps too limited in scope, created a systematic and disparate treatment of taxpayers, both the overassessed and the underassessed.

Accordingly, we reverse the decision of the trial court.[18]

MARY HANNAH LEAVITT, President Judge Emerita

---

[17] *See School District of Philadelphia v. Board of Revision of Taxes*, __ A.3d __ (Pa. Cmwlth., Nos. 195-224, 226-229, 252-266, 268-270, 272-288, 419 C.D. 2021, filed October 6, 2023). There, the school district adopted an assessment policy to appeal where the undertaking would yield an additional $7,500 in annual tax revenue. For tax year 2017, the school district selected 138 properties to appeal out of 520,000 properties, and all were commercial.

We held that the school district's idiosyncratic and subjective selection of underassessed properties was arbitrary and deliberately exempted from review numerous properties that could have yielded an additional $7,500 in annual tax revenue. We held that the "systematic disparate enforcement of the tax laws" created the violation of the Uniformity Clause. *Id*. at ___, slip op. at 15 (citing *Valley Forge*, 163 A.3d at 978).

[18] Because we have determined that the School District's implementation of its tax assessment appeals policy has violated the Uniformity Clause, we need not address Taxpayer's remaining constitutional challenges.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Downingtown Area School District | : | CASES CONSOLIDATED |
| | : | |
| v. | : | No. 92 C.D. 2022 |
| | : | |
| Chester County Board of Assessment Appeals | : | |
| | : | |
| Tax Parcel No.: 33-5-43.3 | : | |
| | : | |
| Appeal of: Marchwood Apartments Owners LLC | : | |
| | : | |
| Downingtown Area School District | : | |
| | : | |
| v. | : | |
| | : | No. 93 C.D. 2022 |
| Chester County Board of Assessment Appeals | : | |
| | : | |
| Tax Parcel No.: 33-5-43.2 | : | |
| | : | |
| Appeal of: Marchwood Apartments Owners LLC | : | |

## **O R D E R**

AND NOW, this 6th day of October, 2023, the January 14, 2022, order of the Court of Common Pleas of Chester County is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Downingtown Area School District | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 92 C.D. 2022 |
| | : | Argued: March 7, 2023 |
| Chester County Board of Assessment Appeals | : | |
| | : | |
| Tax Parcel No.: 33-5-43.3 | : | |
| | : | |
| Appeal of: Marchwood Apartments Owners LLC | : | |
| | : | |
| Downingtown Area School District | : | |
| | : | |
| v. | : | No. 93 C.D. 2022 |
| | : | |
| Chester County Board of Assessment Appeals | : | |
| | : | |
| Tax Parcel No.: 33-5-43.2 | : | |
| | : | |
| Appeal of: Marchwood Apartments Owners LLC | : | |

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE ANNE E. COVEY,** Judge
                  **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: October 6, 2023**

The Policy of the Downingtown Area School District (School District) for determining which property assessments to appeal was based on a specific monetary threshold and was implemented without regard for a real property's classification, sub-classification, or ownership, and therefore, respectfully, I do not believe it was

implemented arbitrarily or discriminatorily, as the majority finds. For this reason, I would hold that the Policy does not violate the Uniformity Clause of the Pennsylvania Constitution, PA. CONST. art. VIII, § 1,[1] or the Equal Protection Clause of the United States Constitution, U.S. CONST. amend. XIV,[2] and is not inconsistent with the Pennsylvania Supreme Court's holding in *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962 (Pa. 2017) (*Valley Forge*), and its progeny. Therefore, I must respectfully dissent.

In *Valley Forge*, the Pennsylvania Supreme Court held that the school district's preliminary objections should not have been sustained because the appellant's complaint had "set[] forth a valid claim that the [s]chool [d]istrict's appeal policy violate[d] the Uniformity Clause." 163 A.3d at 980. Upon noting that a salient aspect of the parties' dispute involved the manner in which this Court had understood the Supreme Court's pronouncements regarding the comparative tax-fairness requirements of the Uniformity Clause and the federal Equal Protection Clause, the *Valley Forge* Court summarized two precepts it had previously articulated and found relevant to its analysis therein as follows:

> First, all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner. Second, this prohibition applies

---

[1] The Uniformity Clause of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1. This Court has held that the Uniformity Clause ensures that "a taxpayer should pay no more or no less than [the taxpayer's] proportionate share of the cost of government." *In re Sullivan*, 37 A.3d 1250, 1254-55 (Pa. Cmwlth. 2012) (quoting *Deitch Co. v. Bd. of Prop. Assessment, Appeals & Rev. of Allegheny Cnty.*, 209 A.2d 397, 401 (Pa. 1965)).

[2] The Equal Protection Clause states, in pertinent part, that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct.

*Id*. at 975 (citations omitted). The Supreme Court held that these principles lead to a conclusion "that a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type—that is, its use as commercial, apartment complex, single-family residential, industrial, or the like." *Id*. at 978.

The Supreme Court explained that it did not disagree with the result this Court reached in *In re Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014), wherein property owners had challenged a school district's policy of utilizing a monetary threshold to determine which properties to appeal and "did not allege a scheme involving disparate treatment of property sub-classifications drawn according to property type or the status of its owner as a resident or non-resident of the taxing district." *Valley Forge*, 163 A.3d at 975 n.13. The Supreme Court noted that, instead, the school district appealed only "properties for which a recent sales price was at least $500,000 greater than its implied market value, defined as the assessed value divided by the" county's Common Level Ratio (CLR). *Id*. at 979 n.19. The Supreme Court stressed:

> We pause at this juncture to clarify that **nothing in this opinion should be construed as suggesting that the use of a monetary threshold— such as the one challenged in *Springfield*—or some other selection criteria would violate uniformity if it were implemented without regard to the type of property in question or the residency status of its owner**. Such methodologies are not presently before the Court.

*Id*. at 979 (footnote omitted) (emphasis added).

In addition, Section 8855 of the Consolidated County Assessment Law (Law) provides in relevant part that "[a] taxing district shall have the right to appeal any

assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment[.]" 53 Pa.C.S. § 8855. However, when a taxing authority exercises this discretionary power, it must do so within "constitutional boundaries." *Valley Forge*, 163 A.3d at 980. Those constitutional boundaries are violated if a taxing authority has a policy to appeal only "the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type[.]" *Id.* at 978.

Most recently this Court discussed *Valley Forge* and our previous decision in *Kennett Consolidated School District v. Chester County Board of Assessment Appeals*, 228 A.3d 29 (Pa. Cmwlth.) (*Kennett*), *appeal granted*, 240 A.3d 611 (Pa. 2020), *appeal dismissed as improvidently granted*, 259 A.3d 890 (Pa. 2021), as follows:

> In *Kennett*, we considered a taxpayer's challenge to a trial court's denial of its motion to quash the school district's assessment appeal of its property. 228 A.3d at 31. Relying on the Supreme Court's analysis in *Valley Forge*, the taxpayer argued that the school district violated the Uniformity Clause by: (1) appealing the assessments of only commercial properties; and (2) setting a monetary threshold targeting properties underassessed by $1 million. *Id.* at 34.

> On appeal, this Court affirmed the trial court's ruling, holding:

>> *We conclude that* [*the school district's*] *appeal practices did not violate the Uniformity Clause.* Under *Valley Forge*, [the school district's] actions were constitutionally firm. The record reflects that [*the school district*] *intentionally disregarded the type of property* and, thus, it cannot be said that [its] actions in appealing the assessments of commercial properties were intentional. *Where, as here, a taxing authority intentionally disregards the type of property when deciding what property assessments to appeal, its conduct is inherently not*

RCJ – 4

> *deliberate.* Moreover, [the school district's] actions *did not systematically target commercial properties, but, rather, only focused on properties that would be worth the cost and expense of an appeal.* *Valley Forge* makes it abundantly clear that there is a balance to be struck between a school district's ability to appeal an assessment and the Uniformity Clause. Thus, *a school district's policy that attempts to be fiscally responsible by only appealing assessments that would generate enough revenue to justify the cost of the appeal does not violate the Uniformity Clause.*

*Id.* at 37 (emphasis added). **We further clarified that "[t]he mere fact that all appealed properties were commercial does not *per se* create a violation of the Uniformity Clause. *This is especially so in light of [the school district's] intentional disregard for the nature of the property.*" *Id.* at 39 (emphasis added). Thus, *Kennett* reiterates the principle that selection of properties for assessment based solely on property type violates the Uniformity Clause, whereas selection based on financial reasons, without regard to property type, does not**.

*Duffield House Assocs., L.P. v. City of Philadelphia*, 260 A.3d 329, 343-44 (Pa. Cmwlth. 2021) (*Duffield House*) (italics in original, boldface type added).

A few weeks before our *Duffield House* decision, this Court decided *GM Berkshire Hills LLC v. Berks County Board of Assessment*, 257 A.3d 822 (Pa. Cmwlth. 2021) (*GM Berkshire I*), *affirmed by an equally divided court,* 290 A.3d 238 (Pa. 2023) (*GM Berkshire II*).[3] In *GM Berkshire I*, GM Berkshire challenged the school district's use of recently sold properties as a basis for selecting properties for tax appeal and maintained that a consideration of only a subclass of properties that were under new ownership violates both the federal Equal Protection Clause and Pennsylvania's Uniformity Clause. This Court concluded that

---

[3] Where our Supreme Court is equally divided, the effect of the split is affirmance of the intermediate appellate court decision. *Borkey v. Township of Centre*, 847 A.2d 807, 814 (Pa. Cmwlth. 2004).

the [d]istrict's method of selecting properties for assessment appeals comports with the Commonwealth's present jurisprudence on the subject of property assessment uniformity. Using recent sales prices as part of the selection of properties for appeals is a quantitative method of reasonably ascertaining a property owner's fair share of the tax burden, because such figures represent the kind of evidence of market value that a school district must show when it appeals an assessment. *See Aetna Life Ins. Co. v. Montgomery Cnty. Bd. of Assessment Appeals*, 111 A.3d 267, 283 (Pa. Cmwlth. 2015) ("evidence of private sales is admissible to determine fair market value").

Further, **as applied by the [d]istrict, this method employs a purely economic approach that is practical for the [d]istrict yet does not improperly differentiate based on property type, which is the type of approach our Supreme Court condoned in *Valley Forge* [] and which this Court subsequently accepted in *Punxsutawney* [*Area School District v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed October 29, 2019),] and *East Stroudsburg* [*Area School District v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed October 17, 2019)]**. As such, we agree with the trial court that the [d]istrict's method did not violate either the Equal Protection Clause of the [United States] Constitution or the Uniformity Clause of the Pennsylvania Constitution.

*GM Berkshire I*, 257 A.3d at 835 (emphasis added). We also explained that we had

affirmed the trial court in *Kennett* based upon *Valley Forge*, *Springfield Township*,

and *Punxsutawney*,[4]

[b]ecause **the evidence established that the school district used a purely monetary approach and had not intentionally selected property assessments to appeal based on property type** (commercial vis-à-vis residential), we held [in *Kennett*] no constitutional violation occurred, reasoning that the school district's "disregard of property type cannot logically equate to unlawful treatment based upon property type." [228 A.3d] at 39. We also rejected [commercial property owner's] as-applied or disparate impact claim: "**The mere fact that all

---

[4] In *Punxsutawney*, this Court stated that even though the school district's practice had not resulted in any appeals of residential properties, the monetary threshold employed was facially neutral and did not foreclose the possibility of that occurrence in the future. *Id*., slip op. at 9.

> **appealed properties were commercial does not *per se* create a violation of the Uniformity Clause**." *Id.*

*GM Berkshire I*, 257 A.3d at 832. As previously stated, an equally divided Pennsylvania Supreme Court recently affirmed this Court's decision in *GM Berkshire I* that the school district's method of selecting properties for appeal did not violate the Uniformity Clause. *See GM Berkshire II*, 290 A.3d at 238.

Herein, the School District appealed the assessment of two separate tax parcels (Property) owned by Marchwood Apartments Owners LLC (Taxpayer), which consist of, respectively, 6.1 and 37.5 acres, to the Chester County (County) Board of Assessment Appeals (Board), which upheld the assessment. The School District appealed that determination to the Court of Common Pleas of Chester County (common pleas), and, prior to the *de novo* hearing, the parties stipulated that the Fair Market Value (FMV) of the Property for the relevant years was: for the 6.1 acre parcel, $11,035,500 as of January 1, 2020, and $11,445,000 as of January 1, 2021, and January 1, 2022; and for the 37.5 acre parcel, $67,789,500 as of January 1, 2020, and $70,305,000 as of January 1, 2021, and January 1, 2022.[5] (Reproduced Record (R.R.) at 28a-30a.) The parties further stipulated that the CLR for the County set by the State Tax Equalization Board was 49.3% for 2020, 47% for 2021, and 45% for 2022, although they did not stipulate that this was the ratio that should be applied to the FMV due to Taxpayer's argument that a rate comparable to that of other apartment complexes, which were also claimed to be underassessed, rather than the CLR, should apply. (*Id.* at 29a-30a.) This left the issue of the School District's authority to initiate the assessment appeals and if it did so constitutionally.

---

[5] The dates for these stipulations vary throughout the record, common pleas' Order, and the parties' briefs. These dates are derived from the transcript during the de novo hearing. (Reproduced Record at 28a-30a.)

The School District presented its assessment record for the Property to establish its prima facie case. Taxpayer then presented evidence in an attempt to rebut the assessment record and to establish the Policy, and Section 8855 of the Law, violated the federal Equal Protection Clause and the Uniformity Clause.

The School District initiated the assessment appeals in this matter through the Policy, which states, relevantly:

1. The Chief Financial Officer **shall annually review recent real estate transactions and/or work with a third[-]party** firm **to identify properties** that may be under[]assessed.

2. The administration shall provide to the Board a list of tax parcels which have been identified for consideration for a district-initiated real estate tax assessment appeal for the current year. Subject to review and approval of the Board, **only property that may potentially result in total annual additional tax revenue of $10,000 or more to be collected in the aggregate by the taxing districts within the . . . School District as a result of an appeal will be included on this list.**

(R.R. at 263a (emphasis added).) Per the deposition testimony of School District employees and School District School Board Directors:[6] the $10,000 threshold related to the amount of revenue increase that would be needed to offset the costs of an appeal; properties were chosen to appeal based on sales and independent appraisals; and between 2012, when the Policy became effective, and 2019, when the present assessment appeal was filed, the School District had appealed the assessments of a variety of properties, including commercial properties, apartment complexes, and one residential property. (*Id.* at 413a-15a, 419a, 421a, 482a, 488a-90a.)

---

[6] This testimony was derived from designated portions of these witnesses' depositions that Taxpayer moved into the record.

The School District's Business Manager described the process of choosing what properties to present to the Board for recommendation, which included calculating the estimated costs of prosecuting the appeals and the potential increase in annual revenue if successful. (*Id.* at 377a-89a, 393a-97a.) Business Manager indicated the Property was added because "it came to the attention of Valbridge [Property Advisors (Valbridge)] and [the School District's] solicitors that the [Property] met the threshold." (*Id.* at 382a.) The School District's Accounting Supervisor, who worked for the District for almost 20 years at the time of her deposition, explained the School District's historic practice of utilizing recent sales data to identify properties whose assessments it would appeal. (*Id.* at 446a-52a.) Accounting Supervisor indicated that the Property was not identified by Valbridge, but was added to the list by Business Manager due to its recent sale at a value that would meet the Policy's threshold, which Accounting Supervisor confirmed through her review of property sales records. (*Id.* at 456a, 458a, 461a-62a, 464a-65a.)

In 2019, the School District hired Valbridge to review properties within the School District. (*Id.* at 38a-39a.) Valbridge identified 15 properties believed to be underassessed and that would meet the Policy's $10,000 threshold. Taxpayer called Reaves C. Lukens, III (Mr. Lukens), who works for Valbridge, to testify about the process of selecting properties for the School District to appeal. Mr. Lukens testified: he limited his review of residential properties to those having more than 3,500 square feet because anything smaller would be unlikely to meet the Policy's threshold; the choice of appealing 15 properties was based on the belief that this was a manageable number and a concern if a change in law occurred it would reduce the School District's "exposure" or "risk"; and he suspected there may be more than 15 properties that could be considered underassessed but he stopped when he reached

15 properties. (*Id.* at 38a-42a, 44a-45a, 48a-49a, 53a-54a, 56a-57a, 61a-62a.) Mr. Lukens agreed it was "possible" "that there were likely residences that would satisfy the . . . threshold," and that one commercial property was not considered because the attorney representing the property owner was "very aggressive" on a particular tax theory, which he considered credible in that case, that could result in the School District losing revenue if it filed an appeal and lost. (*Id.* at 48a-49a, 63a-67a.)

Mr. Lukens agreed there was not a "hard and fast rule with respect to the methodology [he] used," but disagreed with the description of his review of the data as being "rough justice." (*Id.* at 54a.) Mr. Lukens described the process to identify properties to appeal, which involves downloading a list of commercial properties and residential properties over 3,500 square feet in the School District, breaking down the commercial properties into different types, identifying average assessments per square footage or per unit based on sales prices as to the different types of properties, determining whether any appear, preliminarily, to be sufficiently underassessed to warrant appeal, and, if so, reviewing the properties on an individual basis. (*Id.* at 49a-54a.) Mr. Lukens uses the County's assessment records, Multiple Listing Service, ChescoViews, ChescoPon, CoStar, apartments.com, and general "Googling" to identify properties. (*Id.* at 52a-53a.) Mr. Lukens agreed an accurate description of the process was that Valbridge "would look at each property . . . [and] bring them [sic] up and kind of review each property on a case[-]by[-]case basis" to determine "the relative merits or concerns about the potential" to generate the additional $10,000 set forth in the Policy. (*Id.* at 54a-55a.) Mr. Lukens acknowledged the Property was not on his list, but was added by the School District. (*Id.* at 49a.)

Taxpayer also offered the expert testimony of Peter A. Angelides, Ph.D. (Dr. Angelides), who testified about his analysis relating to the School District's assessment appeals for the 2020 tax year. Dr. Angelides explained due to the differing municipalities and tax rates, there were different amounts of increase in value that would be needed to meet the Policy's threshold. (*Id.* at 101a-02a.) Although Dr. Angelides testified the $10,000 threshold has an exclusionary effect on single-family properties, he nevertheless found numerous residential single-family properties that were possibly underassessed at a level that warranted "further investigation" as to whether they would meet the Policy's threshold amount, but were not appealed. (*Id.* at 106a-07a, 111a-13a, 119a.) On cross-examination, Dr. Angelides acknowledged, among other deficiencies, that the majority of the single-family properties he identified as being potentially underassessed were subject to "Act 319" or "Act 515"[7] which meant that the properties were enrolled in programs that lowered their assessments, facts that Dr. Angelides did not take into account. (*Id.* at 127a-34a, 137a-39a; Supplemental Reproduced Record (S.R.R.) at 697a, 701a.[8])

Following the *de novo* hearing, common pleas found that the Policy was "simply stated," did not instruct the School District to consider the type of property in deciding whether a property is underassessed and should be appealed, and did not

---

[7] Act 319 refers to the Pennsylvania Farmland and Forest Land Assessment Act of 1974, commonly known as the Clean and Green Law, Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§ 5490.1-5490.13, which is a preferential tax assessment program that bases property taxes on use rather than fair market value. Act 515 refers to the Act of January 13, 1966, P.L. (1965) 1292, *as amended*, 16 P.S. §§ 11941-11948, and also provides preferential tax assessment treatment for enrolled properties. Both Act 319 and 515 encourage the preservation of lands for, *inter alia*, agricultural, forestry, and open space uses.

[8] We observe that the Supplemental Reproduced Record uses "a" following the page number rather than "b" as required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173.

limit the number of appeals that can be taken in a given tax year. (Common pleas Op. at 2.) Since the effective date of the Policy in 2012, the School District had filed an assessment appeal of one residential property, which was supported by Taxpayer's own evidence. (*Id.* at 2-3.) Common pleas rejected Taxpayer's arguments that the Policy and Section 8855 of the Law violated, both facially and as applied, the Uniformity Clause and the Equal Protection Clause. (*Id.* at 5-7.) It observed that, for the purposes of the Uniformity Clause, "absolute equality and perfect uniformity [are] not required," all property in a taxing district is a single class, and a taxing authority cannot treat different property sub-classifications in a different manner. (*Id.*)

Common pleas further explained that the $10,000 threshold, which was facially neutral and not dependent on classifications by property, did not, as Taxpayer argued, effectively eliminate appeals of residential properties, as at least one residential property had been appealed. (*Id.* at 7-8.) Common pleas held the use of a monetary threshold or cost-benefit analysis is permitted under precedent, including *Valley Forge*, *GM Berkshire I*, and *Punxsutawney*. (*Id.* at 8-10.) Common pleas concluded there could be no as-applied violation because the School District had, in fact, appealed a residential property's assessment, and, even if only commercial properties had been appealed thus far, this would not mean the property-type neutral Policy was unconstitutional. (*Id.* at 9 (citing *Kennett*, 228 A.3d 29).) Thus, common pleas held that Taxpayer had not met its burden of proving the unconstitutionality of the Policy itself or its application and that Section 8855 authorized the appeal, and it accepted the stipulation of the parties regarding the Property's FMV.

The majority reverses common pleas' determination despite acknowledging that the "[P]olicy uses a monetary threshold for identifying properties for tax assessment, which may be constitutional," *Downingtown Area School District v. Chester County Board of Assessment Appeals*, __ A.3d __, __ (Pa. Cmwlth., Nos. 92-93 C.D. 2022, filed October 6, 2023), slip op. at 16-17. Under the current state of the law, as discussed *supra*, including *Valley Forge* and *GM Berkshire I*, there is no dispute the Policy, which is based on a monetary threshold and is neutral with regard to property classification, sub-classification, and ownership, falls within the constitutional boundaries expected of taxing authorities in creating and using such policies. *Bethlehem Area Sch. Dist. v. Bd. of Revenue Appeals of Northampton Cnty.*, 225 A.3d 212, 219 (Pa. Cmwlth. 2020).

The majority nevertheless concludes

> [h]owever, [that] the School District has implemented its [P]olicy in an arbitrary fashion. First, it chose to appeal the assessments of 16 properties even though it knew that there were many more properties in the School District that satisfied the monetary threshold. Second, [Mr.] Lukens testified that he "did not have a hard and fast rule with respect to the methodology [he] used" to identify properties, and he could not elucidate these flexible "rules" that he used. . . . R.R. 54[a]. He could only state that he was "trying to maximize the return to the School District." . . . R.R. 49a, 55a. Third, [the Property] was not on [Mr.] Lukens['] list of properties whose assessments to appeal, and the School District offered no explanation for the later selection of the [Property] for an assessment appeal. Fourth, the School District rejected a commercial property that met the monetary standard for the sole reason that its counsel was aggressive. This selection criterion is discriminatory on its face and unacceptable as a matter of sound public policy.

*Downingtown Area Sch. Dist.*, __ A.3d at __, slip op. at 16.

Respectfully, these conclusions are not supported by the record, which reflects that the School District's choice to appeal 16 properties for 2019 was neither

arbitrary, discriminatory, nor a violation "of sound public policy." *Id.* Rather, it is the majority's conclusions that are inconsistent with the well-settled legal principles regarding the Uniformity Clause and the standard set forth by the Supreme Court in *Valley Forge*.

First, it is unclear whether the **School District** "knew that there were many more properties in the School District that satisfied the monetary threshold." *Downingtown Area Sch. Dist.*, __ A.3d at __, slip op. at 16. While **Mr**. **Lukens** testified **he suspected** there were other underassessed properties and it was "possible" there were single-family residences that "likely" were underassessed, he gave no indication that he advised the School District of these facts. (R.R. at 48a-49a.)

Second, the majority's proposition that seemingly all (or at least more than the 16) underassessed properties in the School District had to be appealed in a given tax year to avoid a violation of the Uniformity Clause is inconsistent with the well-settled principle that "[t]axation [] is not a matter of exact science" and "absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Clifton v. Allegheny County*, 969 A.2d 1197, 1212 (Pa. 2009) (citing *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985)).[9] "Indeed, some **practical** inequalities are anticipated, and **rough uniformity** with a limited

---

[9] *See also City of Harrisburg v. Sch. Dist. of Harrisburg*, 710 A.2d 49, 53 (Pa. 1998); *Sablosky v. Messner*, 92 A.2d 411, 416 (Pa. 1952) ("[T]axation is a practical matter" and the Uniformity Clause "requires merely substantial uniformity of taxation; absolute equality is impractical."); *Commonwealth v. S. Pa. Bus Co.*, 15 A.2d 375 (Pa. 1940) ("We have frequently pointed out that absolute equality is impracticable in taxation, and that the constitutional provision requires merely substantial uniformity."); *Wilson v. City of Philadelphia*, 198 A. 893, 895 (Pa. 1938) ("There is no such thing as perfect uniformity and equality in taxation. The best that can be done, and all that is required, is that it should approximate uniformity and equality as nearly as possible.").

RCJ – 14

amount of variation is permitted so long as the taxing scheme does not impose substantially unequal tax burdens." *Beattie v. Allegheny County*, 907 A.2d 519, 530 (Pa. 2006) (citing *Leonard*, 489 A.2d at 1352; *Sablosky v. Messner*, 92 A.2d 411, 416 (Pa. 1952)) (emphasis added). One practical thing that must be considered is the number of appeals a taxing authority, like School District, and its representatives can reasonably handle in a given year. "Rough uniformity," not "absolute equality and perfect uniformity" is what is mandated by the Pennsylvania Constitution, *Clifton*, 969 A.2d at 1210. Yet, perfection and absolute equality appears to be what the majority demands.

Third, the majority's reliance on Mr. Lukens' statement there was "no hard and fast rule," *Downingtown Area School District*, __ A.3d at __, slip op. at 16, disregards the remainder of Mr. Lukens' testimony. In that testimony, Mr. Lukens describes the process undertaken to find potential properties and perform a case-by-case assessment of properties, regardless of type, to determine if they would meet the threshold. (R.R. at 49a-54a.) Further, while the majority is correct that the Property was not on Mr. Lukens' list, the record contradicts the majority's statement that "School District offered no explanation for the later selection of the [Property] for an assessment appeal." *Downingtown Area Sch. Dist.*, __ A.3d at __, slip op. at 16. It is apparent from the deposition testimony of Accounting Supervisor that the Property was added to the list, with Business Manager's approval, because it was **recently sold** and a review of the sale reflected that a successful assessment appeal would meet the Policy's threshold. (R.R. at 456a, 458a, 461a-62a, 464a-65a.) The selection of the Property based on its status of being recently sold is consistent with both the Policy, which expressly authorizes the use of "recent real estate transactions . . . to identify properties that may be under[]assessed," (*id.* at 260a), and, more

RCJ – 15

importantly, *GM Berkshire I*, which specifically approved the use of recent real estate transactions as a constitutional means of choosing what properties' assessments to appeal, 257 A.3d at 835. Thus, even if Mr. Lukens' process was flawed, the means by which the School District chose to appeal the Property's assessment was constitutionally sound. When Mr. Lukens' entire testimony and the constitutionally sound explanation for why the Property was added to the list of assessments to appeal is considered, I cannot agree with the majority's characterization of the School District's actions as "a piecemeal implementation of this [P]olicy." *Downingtown Area Sch. Dist.*, __ A.3d at __, slip op. at 17.

Fourth, the majority's citation to evidence that an appeal of another commercial property was not filed due to counsel for that taxpayer being "aggressive" oversimplifies the School District's decision. *Downingtown Area Sch. Dist.*, __ A.3d at __, slip op. at 16. It was not merely that the taxpayer's counsel was "aggressive," *id.*, but the fact that there was "a high risk of blowing up [in the School District's] face on appeal because [the taxpayer] could argue [the property was] over assessed based on the dark store theory," and it could cost the School District money if it lost. (R.R. at 63a-65a.) Indeed, Mr. Lukens described the taxpayer's position as "credible." (*Id.* at 66a.) It was decided that an appeal of this commercial property "was not meritorious because of the high risk," meaning that if the School District lost, it would "create a further under[ ]assessment of the property and that was not a risk worth taking." (*Id.* at 65a.) It is not sound public policy or practical for a taxing authority to appeal a high risk property and risk defeating the very purpose of the appeal, increasing revenue.

Moreover, the majority's rationale is inconsistent with the standard set forth in *Valley Forge* and applied in other cases. *Valley Forge* requires that the "other

RCJ – 16

selection criteria" used by a taxing authority, whether a monetary threshold or some other methodology, be **implemented in a neutral manner** without regard for property sub-classification. 163 A.3d at 979. In deeming the School District's "selection criterion [] discriminatory on its face" and a violation of the Uniformity Clause, *Downingtown Area School District*, __ A.3d at __, slip op. at 16, the majority interprets the term "implemented" without consideration of the entire context of the Supreme Court's holding in *Valley Forge*, and effectively creates new criteria that must be met for a policy to be deemed constitutionally sound. Under the majority's criteria, in order for a taxing authority's actions to be constitutional, it must establish that it: has a neutral policy as to sub-classification of properties; used rigid methodology for identifying properties to appeal; attempted to find all properties that are underassessed; appealed all of those properties' assessments without regard to the risks of such appeals and even if it could cost the taxing authority revenue; and relied only on a third party's identification of properties to appeal, if such party is hired, even if there are other neutral bases to that support the conclusion that a property is underassessed. This is not the standard of *Valley Forge* or our precedent, which recognizes that taxing authorities have discretion to choose what properties' assessments to appeal, so long as that discretion is exercised "within constitutional boundaries." *Bethlehem Area Sch. Dist.*, 225 A.3d at 219 (citing *Valley Forge*).

The School District here did not treat property sub-classifications in a disparate manner as proscribed by *Valley Forge*, but acted in a fiscally responsible manner by appealing tax assessments that would generate sufficient revenue to justify the cost of an appeal, appealing the number of assessments that could reasonably be handled in a given tax year, and avoiding appealing property assessments that could, ultimately, result in a loss of revenue. The practice here is

permitted by *Springfield Township* and found to be constitutional under *Valley Forge* so long as the School District did not systematically target commercial properties or rely on other sub-classifications, which the evidence reflects it did not. When the standards set forth in *Valley Forge* and our precedent are applied to the record as a whole, both the record and law support common pleas' determination that both the Policy and its implementation pass constitutional muster.

> The majority further concludes that

> the School District's stated [P]olicy was to appeal assessments that would generate more than $10,000 in tax revenue. This will garner for the School District the entire benefit and leave over[ ]assessed property owners bearing an unfair share of the tax burden. Even so, the School District did not even attempt to capture each and every assessment that would meet the monetary threshold. The monetary threshold may have been neutral, but the implementation, perhaps too limited in scope, created a systematic and disparate treatment of taxpayers, both the over[ ]assessed and the under[ ]assessed.

*Downingtown Area Sch. Dist.*, __ A.3d at __, slip op. at 18. Respectfully, I believe the majority's conclusions miss the mark.

Of course, the School District, as would any taxing authority, sought to benefit itself when it appealed the Property's assessment as being too low in order to increase that assessment to raise revenue. That is the very purpose of that provision. The majority cites the unfair share of the tax burden placed on over assessed property owners, but those property owners have their own appeal rights under the Law through which they can challenge their properties' assessments and seek a reduction. Sections 8844, 8854 of the Law, 53 Pa.C.S. §§ 8844 (allowing for appeals to a county board of assessment appeals by property owners of valuations and assessments), 8854 (authorizing further appeals by both property owners and taxing authorities to county courts of common pleas and to the state's appellate courts). To

hold that a taxing authority's appeal of a property's tax assessment violates the Uniformity Clause and Equal Protection Clause because it does not also somehow act to reduce the tax burden on over assessed property owners, who have their own appeal rights, effectively renders the relief afforded to taxing authorities illusory. And, as discussed *supra*, the Uniformity Clause does not require "absolute equality and perfect uniformity." *Clifton*, 969 A.2d at 1212. Thus, contrary to the majority's position, the School District was not required to "attempt to capture each and every assessment that would meet the monetary threshold," *Downingtown Area School District*, __ A.3d at __, slip op. at 18, as requiring it to do so would demand absolute and perfect equality.

Finally, the majority's statement relating to the alleged disparate treatment of underassessed properties could be viewed as meaning that the Uniformity Clause is violated because the Property is unfairly being treated differently than other underassessed properties. *Id.* at __, slip op. at 2 (citing Taxpayer's argument that the reassessment "has left the [Property] over assessed when compared to other apartment complexes in Chester County"), 18 (stating that the implementation of the Policy "created a systematic and disparate treatment of taxpayers, both the over assessed and the under assessed"). Even if there was some disparate treatment, it is well-settled law that "a property owner is not entitled to have his assessment reduced to the lowest ratio of assessed value to market value to which he could point" where the property owner "has, in fact, not been assessed at more than the common level in the district." *Deitch Co. v. Bd. of Prop. Assessment, Appeals, & Rev. of Allegheny Cnty.*, 209 A.2d 397, 401 (Pa. 1965). Thus, the relief in such cases is the application of the CLR, not some lesser value, to the property at issue. *Id.*; *Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals (LTK Assocs., LP)*, 131 A.3d

152, 157 (Pa. Cmwlth. 2015); *Appeal of Sullivan*, 37 A.3d 1250, 1256 (Pa. Cmwlth. 2012); *Smith v. Carbon Cnty. Bd. of Assessment Appeals*, 10 A.3d 393, 402 (Pa. Cmwlth. 2010). Common pleas here applied the County's CLR to the stipulated FMVs of the Property, which is consistent with our jurisprudence.

I do not disagree that "a countywide reassessment corrects all mistakes," *Downingtown Area School District*, __ A.3d at __, slip op. at 17, but until such time as the General Assembly requires those reassessments be performed at set intervals, taxing authorities are authorized to appeal the assessments of properties they believe are bearing too little of the tax burden so long as they do so within the established constitutional boundaries. Because I would conclude that the Policy and the School District's implementation thereof stand on firm constitutional ground and believe that the majority sets the constitutional bar so high that it nullifies, for all practical purposes, the ability of taxing authorities to utilize Section 8855 of the Law, I must respectfully dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge
